## W. H. HOWE, Appellant, *v.* W. D. COLDREN, Respondent.

Section 68 of Practice Act. The punctuation after the words " excusable neglect," in the latter part of Section 68 of the Practice Act, as printed, is absurd ; there should be a full stop after those words.

Opening Default. Courts should be liberal in setting aside defaults, when it appears that the party defaulted has a good defense, and has been guilty only of carelessness and inattention, without willful or fraudulent delay.

Appeal from Order Opening Default. The Supreme Court will not reverse an order setting aside a default, except in an extreme case.

Affidavit of Merits. An affidavit of merits, which merely states that defendant has a good, legal and meritorious defense, is certainly very positive, but not very satisfactory.

What Affidavit of Merits should State. An affidavit of merits which shows that affiant has fully and fairly stated the facts of the case to his counsel, and that such counsel has advised him that he has a good, legal and meritorious defense, will ordinarily be sufficient, without setting forth the facts constituting the defense.

Affidavit of Merits by Attorney. An affidavit of merits by the attorney in a cause, stating that in his opinion his client has a meritorious defense, will ordinarily be sufficient, if it appear that the attorney is familiar with the facts of the case.

Practice as to Opening Defaults. As a general rule a defaulted party, who has a good defense, should, when prompt application is made and all orders of the Court for indemnity to the opposite side complied with, be allowed to set it up notwithstanding any negligence on the part of himself or counsel. But when the negligence has been so extreme as to cause suspicion of willful delay, the Court should require a full showing of the facts upon which the defense rests, and impose such proper terms as to costs, speedy trial, taking depositions and security for judgment, as may, as far as possible, indemnify the plaintiff against the delay.

APPEAL from the District Court of the Seventh Judicial District, Churchill County.

The defendant was sued as the administrator of E. L. Coldren, deceased. The four hundred dollars sued for was alleged to have been received by the deceased in his life-time from one Davis, in money belonging to the plaintiff and David Rosenburg, who afterwards assigned to plaintiff, and to have been by the deceased converted to his own use. A claim for the amount had been presented to the administrator within the time allowed by law to present claims against the estate, and had been rejected.

The portion of Section 68 of the Practice Act referred to by the Court, as printed in the Statutes of 1861, is punctuated as follows : "The Court       *       *       may, upon such terms as may be just, and upon payment of costs, relieve a party or his legal representatives from a judgment, order, or other proceeding, taken against him through his mistake, inadvertence, surprise, or excusable neglect, when from any cause the summons and a copy of the complaint in an action have not been personally served on the defendant, the Court may allow, on such terms as may be just, such defendant and his legal representative, at any time within six months after the rendition of any judgment in said action, to answer to the merits of the original action."

*H. M. Steele,* for Appellant, contended that there was no merit in the affidavit of the attorney for defendant showing mistake, inadvertence, surprise or excusable neglect; that the affiant showed that he knew of the service of the summons and return ; that he informed the plaintiff's attorney that he knew of them and would answer or demur in time ; and that he had every means to inform himself of the time to appear in the case. He further contended, that there had been *personal* service upon defendant; that Section 68 of the Practice Act would not allow of the opening of a default where personal service had been had on the defendant, and that though no copy of the complaint has been served, it had not been demanded, and was, therefore, unnecessary. (Statute of 1867, 120.) That he informed plaintiff's attorney so, and that he would answer or demur in time—upon his own showing he had

every means in the premises to inform him of the time to appear in the case.    (See affidavit of A. F. Patrick, stated in Transcript on Appeal ; also, see Statutes of Nevada, A.D. 1861, pages .324 and 325, Sec. 68.)

In this case there was *personal* service on the defendant as required by law.    (See summons and return thereof.)

No copy of complaint is now required to be served without demand at time of service, as appears to be required by the latter clause of said Sec. 68 of the Statutes of A.D. 1861—which appellant particularly calls your Honor's attention to—all after the words " excusable neglect." That clause of said section strictly complied with, it appears to this appellant, would not allow of the opening of a default where personal service had been had on the defendant.

That no copy of complaint is required to be served unless demanded at time of service.

He further contended that the Court could not set aside a default taken in a case where all the proceedings had therein were regular, and where it clearly appeared that there was no undue advantage taken against the defendant by the plaintiff, or the Clerk of the Court who entered the default.    (Practice Act, Sec. 150.) He insisted, also, that defendant had made no showing in the Court below of a good and meritorious defense to the action ; that the bare statement of his attorney that defendant had a good and meritorious defense amounted to nothing as evidence of a fact, and was a mere conclusion of law ; that defendant should have shown the Court by his own affidavit or that of his attorney, *the facts* which constituted the defense of the action.

*Robert M. Clarke*, for Respondent, contended that as the order was one of discretion merely, and as an abuse of legal discretion must affirmatively appear, and as every reasonable presumption and legal inducement must be resolved in favor of the *nisi prius* Court, the order should be affirmed.

By the Court, BEATTY, C. J.

An action was brought by the appellant to recover from the defendant four hundred dollars damages for money alleged to have

been received by the intestate and improperly converted to his own use. The administrator lives in Washoe County and the suit was brought in Churchill. The summons was sent to Washoe, served in that county, and returned to the Clerk's office in Churchill. No answer was made in time, default was taken, and judgment entered in favor of the plaintiff. At the next term of the Court the defendant's attorney moved to set aside the default and vacate the judgment entered by the Clerk during vacation. This motion was made on the following notice and affidavit, both of which were served on plaintiff's attorney: " Take notice, that on the first day of the next term of said Court, or as soon thereafter as the same can be heard, we shall move to set aside the default entered by the Clerk in the above entitled suit, upon the ground that the service of summons being made in the county of Washoe, defendant's attorneys were not informed of the date of said service. And that the defendant has a good and meritorious defense to said action."

"A. F. Patrick being duly sworn says, that he is the attorney of said defendant; further says that said defendant is a resident of Washoe County in said State; that summons issued in said case was served in said Washoe County, as this affiant is informed; further says that he was not served with a copy of the complaint or summons in said case; further says that he did not know of the service of said summons until he called upon the Clerk of said Court, and that he (this affiant) supposed the service of said summons was some four or five days later than what appeared to be the fact, to wit, on the twenty-eighth day of December, 1867; further says that he intended to answer or demur to said complaint within the time prescribed by law, and would have done so had he not supposed he had four or five days further time in which to do so; that he informed the plaintiff's attorney that he intended to answer or demur.

" Further says that the defendant has a good, legal and meritorious defense to said action; this affiant, therefore, asks this Honorable Court to set aside the default and judgment entered by the Clerk of this Court in said case."

The Court sustained the motion and set aside the default upon terms, to wit, that the defendant should pay all costs up to date.

From this order the plaintiff appeals. There can be no doubt but that the District Court has the power to set aside a default and judgment which has been taken against the applicant by reason of his *mistake, inadvertence, surprise, or excusable neglect.* The only doubt that has ever arisen on this point comes from an absurd punctuation of the latter part of Section 68 of the Practice Act. No doubt there should be a full period after the phrase " excusable neglect." If a Court may relieve a party from the effects of his own neglect, when that neglect is excusable, there must of course be a wide latitude of discretion in the Court in determining what shall be *excusable.* Running over the New York Digest, we find several cases where the appellate Court has held that it would reverse the ruling of a *nisi prius* Court in refusing to set aside a default; but we do not see a reference to a single case where an order setting aside a default has been reversed. Certainly there are strong reasons why an appellate Court should interfere in the one case and not in the other. If there is a refusal to set.aside a default, a ruinous judgment may be sustained against.a party who, upon hearing, might have interposed a perfectly good defense. By sustaining the default, he would forever be debarred the right of a hearing. If, then, a *nisi prius* Court refuses to set aside a default when a party shows with reasonable certainty that he has a good defense, and he has only been guilty of carelessness and inattention to his business, but no willful or fraudulent delay, it would be highly proper even for an appellate Court to come to his relief if the lower Court refused it. But when the default has been set aside the case is far different. In such case, if the plaintiff has a good cause of action and clear proof of his demand, he could generally try his case in the Court below and obtain another judgment in less time, and with far less expense, than he could bring his case to this Court. In fine, if the plaintiff has a good case there is no necessity of appealing. If he has a bad one, this Court ought not to be very anxious to help him keep an advantage he has obtained, not through the justice or strength of his cause, but by the accidental blunder of his opponent.

It appears to us it would have to be an extreme case, when this Court would reverse an order setting aside a default. Does the

case on hearing present any such extraordinary circumstances as to call for our interposition? The affidavit of the attorney would seem to show negligence on the part of defendant. The affiant says he did not know of the service of the complaint until he called on the Clerk (of Churchill County). It would appear from this that after service the defendant had not written to his attorney. Still, as the attorney was employed, the defendant must have known or anticipated that such suit was to be brought, and perhaps thought it only necessary to direct his attorney to answer when the complaint was filed.

The summons was served on the 23d of December, 1867, and the affiant says he supposed the date of the service to have been the 28th of the month. Why he supposed so, is not shown. If he had shown that from similarity of figures he had, in reading the return, mistaken the 3 for an 8, no doubt this would have been a reasonable excuse for not having answered earlier. But if this was the meaning of the affiant, the language used was too obscure to make it reasonably certain that he so meant. In this respect the affidavit is certainly defective. Again: the affidavit says the defendant has a good, legal, and meritorious defense. This is certainly making this part of the affidavit very positive, but still not very satisfactory. In the first place, it is a matter of very doubtful policy whether the opinion of counsel should ever be taken as to the legality of defense.

In New York, from which State we indirectly borrow our Practice Acts, it has always been held, (under a rule of Court establishing that practice) that an affidavit of merits need not state the facts constituting a meritorious defense, but only that affiant has fully and fairly stated the facts of the case to his counsel, and that such counsel has advised him that he has a good, legal, and meritorious defense. Such rule being established in New York, and also acted on in California, from which we more immediately borrow our Practice Act, we would not reverse a case where the Court below had acted on the same rule. The affidavit, then, of counsel, that, in his opinion, his client had a meritorious defense, would certainly be as good as the affidavit of the party that his counsel told him he had a meritorious defense. In this case the defect is, that

Howe *v.* Coldren.

counsel, or attorney, (for there is no distinction in our Courts between counsel and attorney) does not show his sources of information as to the facts of the case.  Had the affidavit shown in some way that the affiant was familiar with the facts of the case, then the affidavit as to the merits would have been all the law and practice of the Courts require.

The affidavit, then, in this case was ambiguous on one point, and defective on another.

In such case it appears to us the proper practice would have been when this motion came up to continue it to a subsequent day of the term, with leave to affiant to amend his affidavit.

But as the Court below seems to have been satisfied with the affidavit as it was, we see no such abuse of discretion as would justify us in reversing this order, especially as such reversal would operate as a final bar to any defense on the part of the respondent.

As a general rule, we think a party who has a good defense should, when prompt application is made, and all orders of the Court for indemnity to the opposite side are complied with, be allowed to set it up, notwithstanding any negligence on the part of himself or counsel.  Where the negligence has been so extreme as to cause suspicion of willful intent to delay the case, the Court below should be well satisfied of the merits of the defense, and in such case should require a full statement of the facts (not the mere opinion of counsel) upon which the defense rests.  It ought also to impose such terms as to costs, speedy trial, taking testimony, security of judgment to be obtained, etc., as will, as far as possible, indemnify the plaintiff against the delay caused by the negligence of defendant.

In this case costs are imposed.  The Court should also have imposed terms as to the time of going to trial.  In some cases it would be proper to allow the original judgment to stand so as to secure a lien on real estate until the case was finally tried.  In this case that course was not necessary, as a judgment against an administrator is not a lien on real estate of either the defendant or the decedent.

The order of the Court below, setting aside the judgment and default, is affirmed and the respondent will recover his costs in this Court.