[No. 1340.]

## R. L. HORTON, RESPONDENT, v. THE NEW PASS GOLD AND SILVER MINING COMPANY ET ALS., APPELLANTS.

PARTNERSHIP—FACTS INSUFFICIENT TO CONSTITUTE.—A recorded agreement between a mining corporation and private parties in which it was agreed that the corporation should convey an undivided one-half of the mining property to the private parties when they had expended ten thousand dollars in developing and improving the property, but that the corporation should not be liable for any debts incurred in developing and improving the property, taken in connection with the fact that the corporation never held itself out as a partner of the private parties, does not constitute a partnership, even though the corporation was to share in contingent profits with the private parties.

PRACTICE—MOTION TO SET ASIDE DEFAULT—AFFIDAVIT OF MERITS BY ATTORNEY.—In support of a motion to set aside a default and judgment thereon, an affidavit of merits, made by the attorney, is sufficient, when it shows that he is familiar with all of the facts in the case.

IDEM—NEGLIGENCE OF ATTORNEY.—On a motion to open a default and judgment thereon against a company, the affidavit of merits showed that the company had employed an attorney to defend the action, who had interposed a demurrer, which being overruled, he was given time to answer; that at the same time he was given fifteen days to answer in another action pending between the same parties; that he commenced drawing the answers at once and was busily engaged until called away to another county to attend court, where he was detained until after default was entered. *Held*, that it was manifest by the affidavit that both the company and its attorney intended to contest the case, and that the neglect to file the answer, while reprehensible, was not inexcusable, and that the motion to open the default should have been granted, upon such terms as would be just. (MURPHY, J., dissenting.)

IDEM—WHEN MOTION SHOULD BE MADE.—An application to open a default should be made immediately.

### ON REHEARING.

PRACTICE—NOTICE OF MOTION TO OPEN DEFAULT—LACHES OF DEFENDANT.—Judgment by default was entered on May 2, and defendant on May 21 gave notice that on June 25 he would move to open the default. Court was in session from May 27 to May 31, at which time the motion could have been heard had the five days' notice required by law been given. The court, however, had on April 19 adjourned to June 25, and on May 21 there was no reason to suppose it would be in session before June 25. *Held*, as the courts are always open, and the sessions are held at the convenience of the judges and as the exigencies of business require, that the adjournment to June 25 was a notice that a session of court would be held at that time, and it was not a want of diligence for defendant to assume that none would be held before that time, and to give notice of the motion accordingly.

APPEAL from the District Court of the State of Nevada, Lander county.

*A. L. Fitzgerald*, District Judge.

The facts sufficiently appear in the opinion.

*David S. Truman*, for Appellants.

I.  The rule is that the lower court ought to have, in its sound legal discretion, opened the default. (*Howe* v. *Coldren*, 4 Nev. 171; *Johnson* v. *Eldred*, 13 Wis. 482; *Hill* v. *Crump*, 24 Ind. 291; *Chicago & N. W. R. R. Co.* v. *Gillett*, 38 Iowa 434; *Montgomery* v. *Ellis*, 6 How. Pr. 326; *Benedict* v. *Spendiff*, 22 Pac. Rep. 500.)

II.  The recorded agreement between the New Pass Company and its co-defendants defeats the partnership theory and clearly shows that the company was not to be held liable for any contractual debts incurred by its co-defendants.

*Henry Mayenbaum*, for Respondent.

I.  Defendant's neglect in not answering in time was not excusable but was inexcusable. Even excusable neglect must plainly appear to authorize the court to set aside judgment by default. (*Coleman* v. *Rankin*, 37 Cal. 247; *Reilly* v. *Ruddock*, 41 Cal. 312; *Bailey* v. *Taaffe*, 29 Cal. 422; *People* v. *Raines*, 23 Cal. 127; *Elliott* v. *Shaw*, 16 Cal. 377; *Mulholland* v. *Heynemann*, 19 Cal. 605; *Harper* v. *Mallory*, 4 Nev. 447; *Haley* v. *Eureka Bank*, 20 Nev. 410.)

II.  These agreements cut no figure in this case. They are *res inter alios acta.* Indeed, they show that there was a *partnership between the corporation and the other defendants, because the corporation were to get fifty per cent. of the proceeds of the mines.*

The *sharing* of the *profits*, in any degree, constitutes a partnership, and though those profits be designated by the parties as rents, and though they agreed that such *sharing of profits* should be no *partnership.* "Partnership" is a conclusion of law from the facts, and the parties cannot escape the consequence and liability as partners by calling a *partnership something else.* (1 Lindley's Partnership, p. 33, et seq. 4 ed. Ewell's Am. ed., and the cases cited in the notes; *Manhattan* v. *Sears*, 45 N. Y. 800, 801.)

III.   The affidavit of merits should be by defendant and not by its attorney. (*Bailey* v. *Taaffe*, 29 Cal. 425; *Nickerson* v. *Cal. Raisin Co.*, 61 Cal. 268.)

By the Court, BIGELOW, J.:

This is an action brought to recover judgment for five thousand two hundred and twenty-three dollars and thirty-seven cents, alleged to be due the plaintiff for goods sold and delivered, for labor performed, and upon other contracts with the defendants.

On April 16, 1890, a demurrer previously interposed by the corporation defendant was overruled, and it was given fifteen days in which to answer. No answer being filed, and the other defendants having also failed to answer, default and judgment were entered against all of them on May 2, 1890. On May 21, 1890, the corporation through its attorney served notice of a motion supported by affidavit to set this default and judgment aside so far as it affected the company, upon the ground, as therein stated, " of surprise, inadvertence, mistake and excusable neglect to file answer herein, and on the ground that default was taken before the time for answering had expired." There is nothing in the last ground stated, and it will be unnecessary to consider it further.   On October 9th the motion was overruled, and from this order the company appeals.

1. From the affidavit upon which the motion was based and the accompanying exhibits, one of which is its proposed answer, it appears, *prima facie*, that this defendant has a good and sufficient defense to the action upon the merits. It is shown that the company, being the owner of certain mining property, entered into a contract with the other defendants by which it was agreed that upon their expending ten thousand dollars in developing and improving the property, they were to receive a conveyance of an undivided one-half thereof; but it was expressly stipulated that the company should not become responsible for any debts incurred by them in making such improvements, nor should any partnership be created between them. This agreement was placed on record in the recorder's office of the proper county, and the indebtedness upon which the action was brought appears to have been incurred while the property was being worked under this arrangement.

It is contended by the plaintiff that as the defendant was in a certain contingency to share some of the profits derived from the working of the mining property, it therefore became a partner with the other defendants in such working, notwithstanding the stipulation to the contrary, and consequently liable for the debts incurred therein. Waiving the question of whether a corporation can form a partnership with an individual, it has been the recognized rule of law in nearly all courts since the decision in 1860 of the case of *Cox* v. *Hickman*, 8 H. L. Cas. 268, that mere participation in the profits of a business does not create a partnership. The company had not held itself out as a partner, nor had it by contract or intention formed a relation with the other defendants in which the elements of a partnership are to be found. It was therefore not liable as a partner. (*Beecher* v. *Bush*, 45 Mich. 188; *Heckert* v. *Fegely*, 6 Watts & S. 139; *Clinton* v. *Howard*, 89 Mo. 192.) Thus it would seem that a heavy judgment has been obtained against the company upon claims for which it is in no wise responsible.

The affidavit of merits is sufficient, although made only by the attorney. (*State* v. *Mining Co.*, 13 Nev. 194; *Jean* v. *Hennessy*, 74 Iowa 348.) The defendant being a corporation it was necessarily made by some agent, and as the attorney swears he is familiar with all the facts of the case, both of plaintiff's claim and the defendant's defense, no reason is perceived why he could not make it as well as another.

2. Having *prima facie* a good defense to the action, the next inquiry is whether the company has been guilty of such negligence in making its answer that it has been justly refused the opportunity of defending itself. While opening a default is said to be much in the discretion of the lower court, the cases show that this means a legal discretion which has been unhesitatingly supervised by appellate tribunals wherever it appears to have been so exercised as to result in injustice. In this regard it is said in *Bailey* v. *Taaffe*, 29 Cal. 424: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion to be exercised in conformity with the spirit of the law, and in a manner to subserve, and not to impede or defeat the ends of substantial jus-

tice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. If it be doubted whether the excuse offered is sufficient or not, or whether the defense set up is with or without merit *in foro legis*, when examined under these rules of law by which judges are guided to a conclusion, the judgment of the court below will not be disturbed. If, on the contrary, we are satisfied beyond a reasonable doubt that the court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present as in any other."

It is difficult to lay down any general rule for determining when a default should be opened. As said in *State* v. *Mining Co.*, 13 Nev. 202, each case must necessarily be determined upon its own peculiar facts. It is safe, however, to say that courts should be liberal in such matters, where a meritorious defense is shown to the whole or a substantial part of an action, and it is apparent that the failure to answer is the result of a mistake or of negligence which is not so gross as to be inexcusable, or to indicate trifling with the court, to the end that cases may be determined upon their merits and not upon some inadvertence or slip or aberration of the opposing party or counsel. Such terms can always be imposed as will compensate the plaintiff for any loss occasioned him by the delay and as will make it unprofitable to a defendant to willfully neglect to answer.

Courts are established not only to arbitrate and settle the legal controversies of men, but also to settle them, so far as the inherent imperfections of human tribunals will permit, upon a just and equitable basis. This can only be arrived at after a full and patient hearing of both sides. Of course there must be rules of procedure for doing this, which must not be trifled with. Still they are but means to an end; and whenever they have so operated, or have been so administered, that the action has been determined with reference to them, instead of the great principles of right and justice, it can not be denied that therein the tribunal has failed to reach the end for which it was created. Admittedly, this may be the necessary consequence of the operation of rules indispensible to the transaction of business, but the result is the same—the form has triumphed over the substance. All will agree that whenever this can be avoided with justice to

the opposing party, it should be done. In this connection the language of Justice Baldwin in *Roland* v. *Kreyenhagen*, seems quite appropriate: " The power of the court should be freely and liberally exercised under this and other sections of the act to mould and direct its proceedings so as to dispose of cases upon their substantial merits, and without unreasonable delay, regarding mere technicalities as obstacles to be avoided, rather than as principles to which effect is to be given in derogation of substantial right. While formal requirements of pleading and practice can not be dispensed with by the court, it can usually make such orders, or grant such amendments in the progress of the cause as will avoid the effect of petty exceptions, and dispose of the case upon its legal merits. It can also usually prevent unjust or unfair advantages, or serious injury arising from casualties or inadvertences. The design of the act was to call into requisition its equitable powers in this respect." (18 Cal. 457.) A finding that a defendant has negligently failed to answer in the proper time does not cover the case; the question still remains, is the negligence excusable ? Where the circumstances are such as to lead the court to hesitate in answering this query, the doubt should be resolved in favor of the application. (*Watson* v. *Railroad Co.*, 41 Cal. 20.)

Two cases in this court are relied upon by opposing counsel— *Howe* v. *Coldren*, 4 Nev. 171, and *Harper* v. *Mallory*, Id. 447— the former as requiring the opening of the default and the latter as justifying the refusal to do so. Each is perhaps a fair sample of its class; the one enforcing all the strictness of the common law system of pleading and practice, and the other recognizing the more liberal principles of the reformed procedure, which has endeavored to wipe away much of the technicality and foolish adherence to form of the former. *Harper* v. *Mallory* was decided by a divided court, and it seems difficult to say of it, as is said in the prevailing opinion therein concerning the case of *Howe* v. *Coldren*: " In the decision we concur." On the other hand, the remarks in the opinion in *Howe* v. *Coldren*, *dicta* though they be, are, to our comprehension, founded in both justice and good sense. The court there says (page 175): " Certainly there are strong reasons why an appellate court should interfere in the one case and not in the other. If there is a refusal to set aside a default, a ruinous judgment may be sustained against a party who, upon hearing, might

have interposed a perfectly good defense. By sustaining the default, he would forever be debarred the right of a hearing. If, then, a *nisi prius* court refuse to set aside a default when a party shows with reasonable certainty that he has a good defense, and he has only been guilty of carelessness and inattention to his business, but no willful or fraudulent delay, it would be highly proper even for an appellate court to come to his relief if the lower court refused it. But when the default has been set aside the case is far different."

In the case at bar, it appears that after the action was brought the defendant employed an attorney to defend it, and placed the matter in his hands. Certainly this was all the client was called upon to do. The attorney interposed a demurrer to the complaint, and when this was overruled, obtained time to answer. At the same time, in another action pending between the same parties he was given fifteen days to answer after the service upon him of a bill of items. The showing is that he commenced drawing the answers at once, and in this, and other matters, was quite busily engaged until April 26th, when he left Austin for Belmont, where he was employed in the trial of an action before the district court of Nye county, and was detained there longer then he expected to be, and until after default was entered. He claims to have been under the impression that he also had fifteen days to answer in this case, after the service upon him of the bill of items, but it clearly appears that his failure to file the answer in time was not owing to this. Taken altogether it sufficiently appears from the affidavit, while not as explicit as it might have been, that the defendant intended, in good faith, to contest its liability in the case; that the attorney in like good faith intended to file the answer in time, and had it prepared for this purpose, but he appears to have negligently forgotten when the time for answering would expire, or believing that he would be able to return from Belmont earlier than he could reasonably hope to do, he neglected to file it before leaving Austin, but left it in his office. While at Belmont it occurred to him that the time for answering might be about to expire, and he immediately made arrangements for having it filed, which was done on May 2d, but after the default had been entered

Bearing in mind that the statute provides for relieving a party from a default taken against him through his negligence when the negligence is not inexcusable, does it not appear at

once that a judgment for over five thousand dollars is a rather heavy penalty to pay for such carelessness as is shown here? While it was negligence, such as is properly punished by the infliction of terms, it does not seem to be of the kind that should be deemed inexcusable, and the defendant, consequently, denied any opportunity of making a defense. It was the severest penalty that could be invoked for the grossest misconduct, and in imposing it in this case we are of the opinion that the court erred in the exercise of its discretion to such an extent as to require a judgment of reversal. As presented, the denials of the answer are insufficient, but are, of course, subject to amendment.

3. Application to open a default should be made immediately. There was apparently an unnecessary delay in making the motion in this case, and had it appeared that the result of this would be to defer the trial of the case if the motion was granted, it might have justified the ruling of the court, but it is affirmatively shown that it did not, as court was not in session during the time. The order and judgment appealed from are reversed and cause remanded.

MURPHY J., dissenting.

While the *nisi prius* court might, under the circumstances of this case, have set aside the default, and permitted the defendant to answer, yet I can not say there has been such abuse of that discretion with which the court is clothed as would justify a judgment of reversal.

The granting or refusal of a motion to set aside defaults has always been held to be a matter within the sound legal discretion of the lower court, and unless there has been an abuse of that discretion, it has not been the practice in this court to reverse such decisions. (*Howe* v. *Coldren*, 4 Nev. 172; *Harper* v. *Mallory*, Id. 449; *State* v. *Mining Co.*, 13 Nev. 194; *Ewing* v. *Jennings*, 15 Nev. 81; *Garner* v. *Erlanger*, 86 Cal. 60; *Underwood* v. *Underwood*, 87 Cal. 523.) The complaint was filed March 1, 1890. On the 5th day of March, 1890, summons was served on the defendant. On the 14th day of April, 1890, a demurrer was filed, and on the 16th day of April, 1890, the question as to the sufficiency of the complaint was argued and submitted to the court for its decision, the demurrer was overruled, and the defendant given fifteen days in which to file its answer.

On the 2d day of May, 1890, the defendant not having filed its answer, the plaintiff by his attorney had the default of the defendant entered by the clerk and judgment rendered thereon. On the 21st day of May, 1890, the attorney for the defendant filed and served a notice on the plaintiff, setting forth " that he would on the 25th day of June, 1890, move the court to set aside the judgment entered by default, on the ground of surprise, inadvertence, mistake and excusable neglect to file answer herein, and on the ground that the default was taken before the time for answering had expired. On the 9th day of October, 1890, the motion to open up the default was argued and submitted, on the affidavit of the attorney for the defendant, wherein he alleges that the minutes of the court were not in conformity with the order, as made by the judge thereof, and that he was called away to Belmont, Nye county, where he was detained in attendance on court longer than he expected to be, and did not return to Austin until after the default of the defendant had been entered." After argument, the court denied the motion.

There is no merit whatever in the first point raised by the affidavit, as to the second ground the absence of the attorney. It appears from the affidavit that he left Austin on the 26th day of April, 1890, to go to Belmont for the purpose of attending court at that place; " that he had prepared the answer in this case, and left it in his office." There is no reason given why he did not file the answer before leaving for Belmont.

If the judgment in this case is set aside, it will be on the sole ground of neglect, carelessness, or mistake of the attorney, and courts have steadily refused to vacate judgments under such circumstances. In the case of *Smith* v. *Tunstead*, 56 Cal. 177, the supreme court said: " An examination of the affidavits impresses us with the conviction that the plaintiffs were not negligent. But their attorneys were, and parties in this state have in such cases as this been held not entitled to relief on account of the negligence of their attorneys." Section 68 of our practice act is copied from the California statute. In the case of *People* v. *Rains*, 23 Cal. 128, the attorney for the defendants had prepared a demurrer to file to the amended complaint, but failed to file it in time, in consequence of a mistake on their part as to the day on which the time for filing would expire. They, by a miscalculation of time, supposed that the time would not expire until

the day after it did; default was taken, and the court refused on application to set it aside. The rule as above announced is supported by the following cases: *Ekel* v. *Swift*, 47 Cal. 619; *Elliott* v. *Shaw*, 16 Cal. 377; *Haight* v. *Green*, 19 Cal. 117; *Mulholland* v. *Heyneman*, Id. 605; *Babcock* v. *Brown*, 25 Vt. 552; *Davison* v. *Heffron*, 31 Vt. 688; *Kerby* v. *Chadwell*, 10 Mo. 393; *Bosbyshell* v. *Summers*, 40 Mo. 172; *Gehrke* v. *Jod*, 59 Mo. 522; *Matthis* v. *Town of Cameron*, 62 Mo. 504; *Foster* v. *Jones*, 1 McCord, S. C. 116; *Burke* v. *Stokely*, 65 N. C. 569; *Phillips* v. *Collier*, 13 S. E. Rep. 260; *Merritt* v. *Putnam*, 7 Minn. 493; *Tarrant Co.* v. *Lively*, 25 Tex. Supp. 399; *Smith* v. *Watson*, 28 Iowa, 218; *Jones* v. *Leech*, 46 Iowa, 186; *Spaulding* v. *Thompson*, 12 Ind. 477; *Phelps* v. *Osgood*, 34 Ind. 150; *Brumbaugh* v. *Stockman*, 83 Ind. 583; *Kreite* v. *Kreite*, 93 Ind. 583; *Hoag* v. *Society*, 27 N. E. Rep. 438; *Parker* v. *Bank*, Id. 650; *Welch* v. *Challen*, 31 Kan. 696; *Green* v. *Bulkley*, 23 Kan. 130; *Kyle* v. *Chase*, 14 Neb. 531; *White* v. *Ryan*, 31 Ala. 400; *Holloway* v. *Holloway*, 11 S. W. Rep. 233; *Fowler* v. *Colyer*, 2 E. D. Smith 125; *Mulhern* v. *Hyde*, 3 E. D. Smith 177; *Burger* v. *Baker*, 4 Abb. Pr. 12; *Thielman* v. *Burg*, 73 Ill. 293; *Shroer* v. *Wessell*, 89 Ill. 114; *Gray* v. *Sabin*, 87 Cal. 211; *O'Connor* v. *Ellmaker*, 83 Cal. 452. The reason for the strict enforcement of this rule is, that the law regards the neglect of the attorney as the client's own neglect, and will give no relief from the consequences thereof. As said in the case of *Foster* v. *Jones*, *supra*. " It is difficult to foresee all the consequences which might result from permitting a party, after judgment and execution, to set aside the proceedings against him on the ground of negligence or ignorance of his attorney. It would very much tend to destroy all the rules of pleadings and produce endless litigation." In my opinion, the judgment of the district court ought to be affirmed.

By the Court, BIGELOW, J., on rehearing:

A rehearing was granted in this case for the purpose of considering whether the defendant had been guilty of such laches in giving notice of the motion to open the default and judgment as justified its being overruled.

The default was entered May 2, 1890. On May 21st the notice was given that on June 25, 1890, the motion would be made. The affidavit upon which it was based states that up to

that time no court had been held, and it consequently appeared that the nineteen days' delay in giving the notice had not caused the loss of any opportunity for the motion to be heard, or the case to be tried, had it been granted. It was in view of this showing that we said that it affirmatively appeared that the delay in giving the notice had not caused the loss of any opportunity for the case to be tried. It is now, however, shown by certified copies of the minutes, that court was in session from May 27th to May 31st, and, presumptively, the motion could have been heard then had only five days' notice been given. This made a *prima facie* showing of such want of diligence as justified the refusal to open the default.

But it is now shown in the same manner that on April 19, 1890, the court adjourned to June 25, 1890, and apparently, on May 21st, when the notice was given, there was no reason to suppose it would be in session until then. No objection has been made to these records or to the time or manner of their production, and we consequently prefer to consider them as being competent for the purpose for which they have been offered, and to determine the matter upon its merits.

Under the system prevailing in this state there are no terms of the district court; the courts are always open, and the sessions are held at the convenience of the judges, and as the business may require. There is consequently no way in which it can be absolutely determined when court will be held. As in this instance, although an adjournment had been had to June 25th, there was nothing to prevent an earlier session should anything unexpectedly arise to require it. But when it has been adjourned to a certain time, this is a notice that a session will be held then, and, it is fair to presume not until then. Certainly we cannot say that it is want of due diligence for an attorney to assume that it will not be, and to give notice of the hearing at that time of any matter he may wish to bring before the court.

The judgment is reversed, with directions to the district court to open the default upon such terms as may be just and proper in the premises.

MURPHY, J., dissenting:

In my opinion the judgment of the district court should be affirmed.