Annie C. Peterson, a Minor, by her Next Friend, her Father, Andrew Peterson v. The Atlantic City Railroad Company, Appellant.

*Practice, Supreme Ct.—Rules—Engagements of counsel—Practice, C. P.*

As by the constitution the jurisdiction of the Supreme Court extends over the state, it must, as an inherent judicial power necessary to the exercise of its jurisdiction, have authority to make rules which, in its opinion, will enable it to dispose of the business which comes before it from every court in the state.

Rule XLI. of the Supreme Court which provides that "engagements of counsel in the lower courts will not be recognized as a reason for the continuance or postponement of a cause," is both legal and reasonable, and it is the duty of the lower courts to have regard for it.

The Supreme Court will reverse a judgment on a verdict where it appears that the trial was held in the absence of defendant's counsel who was in the Supreme Court at the argument of a cause in which he was counsel.

Argued April 7, 1896. Appeal, No. 98, Jan. T., 1896, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1894, No. 210, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries. Before BIDDLE, J.

*Errors assigned* were, (1) trying the above case in the absence of the counsel for defendant; (2) trying the case in the absence of defendant's counsel after the court had received both verbal and written notice of counsel's engagement in the Supreme Court, and after the refusal of the Supreme Court to continue the argument; (3) continuing to try said case after he had received written notice of the order of the Supreme Court, said notice having been received by him before said case was finished.

*Gavin W. Hart*, for appellant.

*D. B. Meany*, for appellee.

OPINION BY MR. JUSTICE DEAN, October 5, 1896:

This action was for damages for personal injuries from neg-

ligence of defendant; it was tried in the court below on January 25, 1895, in the absence of defendant's counsel, and a verdict for $6,000 given for plaintiff.    The absence of counsel, Gavin W. Hart, Esq., was owing to his presence in this court at the argument of a cause in which he was of counsel for appellee, Sheehan v. Railroad, on Supreme Court calendar for same week and for argument same day.    The court below was moved for a new trial on this ground, which was refused, and judgment entered on the verdict.    We now have this appeal by defendant, assigning for error the action of the court below in proceeding with the trial in absence of its counsel.

Rule XLI. of the Supreme Court is as follows:

"That the hour list be suspended in the eastern district during the period assigned to the argument of cases from the county of Philadelphia.

"The argument of each cause shall be limited to one hour, unless the Chief Justice, upon an examination of the paper books, shall consider more time to be necessary.

"Sixty causes shall be assigned to each week, and a list thereof shall be made up and published by the prothonotary on the Saturday preceding.    Said causes shall be set down in the order of their term and number, and shall be numbered on said list consecutively.    The first twelve cases on said weekly list shall be assigned for argument on Monday, and for each succeeding day of the week, except Saturday, the first twelve cases theretofore undisposed of on said list shall be assigned for argument.    No cause on said list shall be continued when reached, except for a sufficient cause.    Engagements of counsel in the lower courts will not be recognized as a reason for the continuance or postponement of a cause, except when they are actually engaged in a trial which has been commenced in a previous week and is unfinished."

As by the constitution the jurisdiction of the Supreme Court extends over the state, it must, as an inherent judicial power, necessary to the exercise of its jurisdiction, have authority to make rules, which, in its opinion, will enable it to dispose of the business which comes before it from every court in the state.    Whether its rules, intended to speed hearings, are the very best to accomplish the purpose, or whether they in any particular instance operate hardly, are proper subjects of dis-

cussion in determining whether they shall be abrogated or amended; but when adopted, such discussion is out of place in determining whether they should be recognized by the lower courts. If the Supreme Court have authority to adopt rules which in its judgment are necessary for the prompt transaction of the public business, we think no lawyer will doubt its power to enforce them; and this without regard to a difference of opinion as to their equitable operation. Clearly then, it is the duty of the lower courts to have regard to them, not because they, in all cases, are the best, but because, being in the judgment of the Supreme Court the best, it has adopted them. They then, necessarily, become a rule of action for the lower courts, in so far as their business is affected by them, because they are the law. The common pleas courts have power to adopt rules which shall facilitate the transaction of their business; we have always rigorously sustained this power, unless in rare cases, where the rules were in violation of law. We cannot, however, sustain a rule or an order, even though made with a view to compel prompt trial of an issue in the common pleas, if the effect of such rule is to deny other litigants their right to a hearing in an appellate court. In that case it is a manifest violation of law, and our judgment is final on that question.

Besides, not only should we have the aid of the court below in the enforcement of rule XLI., because it is a lawful exercise of the power of this court, but also because it is a reasonable exercise of that power. There are in the commonwealth fifty-four judicial districts, with ninety-nine judges; from the final judgments and decrees of these courts there come before us annually, approximately, one thousand appeals which ought to be heard while this court is in session; after argument, many of these cases demand prolonged investigation and careful consideration; if we are to dispose of this litigation promptly, that disposition of it can only be accomplished by strict order of hearing and rigorous enforcement of the order by such rules as XLI.

The court sits in Philadelphia five months; seven weeks of that time are set aside for hearing appeals from the courts of that county; and this, in view of the whole calendar, is all we can afford to give, and in our judgment all it is entitled to, exclu-

sively, in an equitable distribution of our time among all the litigants of the state. All the appeals assigned to the two Philadelphia periods are seldom got through with in that time; those not reached are heard as we can find time on weeks assigned to other counties, and if not heard then they go over for a year. To keep down the number of those that go over, many of them involving large sums of money, it is imperative upon us to insist on the presence of counsel when their cases are called. The rule is not for our convenience, but to promote the interests of suitors. In some cases, such as illness or recent death of counsel and like causes, the rule is relaxed, but not to suit the convenience of counsel who have causes for trial on the common pleas calendar; that, if permitted, would practically break up our calendar and continue about one half the cases for a year, and if such a course were allowed, it would not be three years until the Philadelphia list would be incumbered with cases which would not be reached for several years. This would be a denial of justice. In adopting and enforcing this rule, we appreciate the difficulties of the common pleas in disposing promptly of all the cases on their calendars in the order in which they are called, while this court is engaged on the list of appeals for Philadelphia; but their cases are more completely in their control than ours; the counsel and parties concerned, in most instances, all reside in the city; during our session they have twenty weeks for Philadelphia, while we have but seven; under such circumstances, not without inconvenience, we admit, but without seriously delaying suitors, such order could be made by the lower courts as would guard against an adverse judgment to a client, while his counsel was attending to his professional duty in this court. But however this may be, the inconvenience to suitors in a few cases ought not to be permitted to work the eventual vexatious delay and gross injustice which otherwise would be suffered by all the parties to all the appeals from final judgments in all the courts of the city. In view, then, of these facts, and the further fact that neither the learned judge of the court below nor we can add anything to the fifty-two weeks of the year, what is his plain duty? As we see it, it is, not only in letter but in spirit, to recognize this rule, and to so arrange the trial list of causes before him that counsel, by obeying it, shall not put in peril the interests of their clients.

We think it not improbable, when the learned judge remarked: "I doubt the right of the Supreme Court to make any such rule, and I would like to test it," he for the moment misapprehended our relations to each other and to the public. Neither he nor we, as against each other, have any rights to assert; both of us have only very plain judicial duties to perform; the public alone have rights to be insisted on, and rights which both of us are bound to keep in mind; these are, to have justice administered without "denial or delay." If, in working together for this object, our rules or orders should, in rare cases, come into conflict, then the only question is, not which shall assert a right, but which has the authority to finally determine what shall best promote the public interests. We feel sure, a glance at the constitution, from which both of us derive whatever judicial authority we have, furnishes a complete answer. If the authority to finally decide is reposed in us, then, we are bound to exercise it, not as asserting a right, but as performing a public duty.

It would serve no good purpose to take up and discuss at length the conflicting statements of facts by the learned judge of the court below and the able counsel for defendant. The contradictions are more apparent than real, and such as usually arise where each of the parties, under a sense of injury, strenuously insists on what he conceives to be his personal rights, not regarding the situation from the standpoint of official duty; and although we have carefully considered the testimony, it would only, perhaps, aggravate the irritation were we to attempt to reconcile these conflicting statements. We believe each attempted to perform his duty as he saw it, though they do not seem to believe that of each other. Nevertheless, the main fact stands out prominently and unquestionably, that the court below disregarded, in spirit at least, a rule of this court, and thereby this defendant, in the absence of its counsel who was in attendance upon his duties in this court, was cast in a verdict for $6,000. Lawfully, defendant had a right to counsel; through no fault of its own, or of its counsel, but because of the erroneous ruling of the court below, it had none; the trial was not therefore lawful, and the judgment must be reversed. It is reversed accordingly, and a v. f. d. n. awarded.