[No. 1678.]

# RICHARD H. STRETCH, Respondent, v. MONTEZUMA MINING COMPANY, Appellant.

1. Stipulations — Requisites — Writing. An oral stipulation made by defendant's attorney, that it would make an effort to settle with plaintiff, failing which it would file an appointment of a state agent upon whom service might be had, was unenforceable under rule 27 of the district court requiring stipulations to be in writing.

2. Default Vacated. Defendant, a foreign corporation, had knowledge for more than five months before entry of its default that the suit was pending, but was not aware that service had been made until ten days after default entered. After knowledge that service had been secured, defendant wired its local attorney to defend. As state agent he had forwarded copies of the complaint and summons in due time to defendant's supposed address; but they were sent to defendant's general manager, who had recently absconded, without the knowledge of such state agent at the time the papers were sent. After the entry of the default, it was necessary to take the deposition of plaintiff, who was a non-resident, before judgment could be entered. *Held*, that defendant was not guilty of inexcusable delay, and was entitled to a vacation of the default and leave to answer, under Comp. Laws, 3163, providing that the court may allow an answer to be filed after the time limited and relieve a party from an order or proceeding, taken against him by mistake, inadvertence, surprise, or excusable neglect.

Appeal from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *B. F. Curler*, Judge.

Action by Richard H. Stretch against the Montezuma Mining Company. From an order denying defendant's application to open a default and permit defendant to answer, defendant appeals. **Reversed.**

The facts sufficiently appear in the opinion.

*Alfred Chartz*, for Appellant:

I. In the case of *State of Nevada* v. *Consolidated Virginia Mining Company*, 13 Nev. 194, it appeared that James G. Fair as managing agent of the corporation was served with complaints and summons in two suits, and that he handed said papers to the attorney of the corporation, and the attorney answered only to one suit, and the state took default for the other. The attorney of the corporation made affidavit that he had never known of or heard of but one suit, and it was held that the failure of the attorney to appear in both

actions was an honest mistake, without fraud or negligence on the part of the corporations, their superintendent, or attorney, and that the facts stated in the affidavits presented on motion to set aside the defaults made out a case of excusable neglect.

II.   There are far greater reasons to excuse the defendant at bar.   Instead of the managing agent of the corporation receiving the summons and complaint, it was only the resident agent upon whom substituted service of summons could be made, and, instead of the attorney of the corporation receiving the same from the managing agent, the resident agent sent the same by mail.   The rule as to defaults is found at pp. 164, 165, vol. 6, Ency. Pl. & Pr., and the authorities therein cited to the effect that gross negligence of the defendant is sufficient to deny application for relief.   (*Clark* v. *Lyon*, 2 Hilt. N. Y. 91, where the negligence of a clerk was considered sufficient to open a default; note 5, p. 165, vol. 6, Ency. Pl. & Pr. and the notes connected therewith.)

*James T. Boyd* and *A. N. Salisbury*, for Respondent:

I.   A motion to open or vacate a default is addressed to the sound legal discretion of the trial court on the particular facts of the case.   (Black, Judgments, vol. 1, sec. 354; 6 Ency. Pl. & Pr. p. 232; *Haley* v. *Eureka County Bank*, 20 Nev. 410.)

II.   Each motion to open a default must be decided on its own peculiar facts.   Our supreme court says, in the case of *Horton* v. *New Pass M. Co.*, 21 Nev. 184, and again in *State* v. *Mining Company*, 13 Nev. 202, "it is difficult to lay down any general rule for determining when a default should be opened.   Each case must be determined upon its own peculiar facts.   It is safe, however, to say that courts should be liberal in such matters where a meritorious defense is shown to the whole or the substantial part of an action, and it is apparent that the failure to answer is the result of a mistake or of negligence which is not so gross as to be inexcusable, or to indicate trifling with the court, to the end that cases may be determined upon their merits. * * *"

III.   An order refusing to vacate a default rests wholly

with the discretion of the trial court and will not be disturbed on appeal, except on the clearest proof that there has been an abuse of this discretion.   In *Nichol* v. *Weldon*, 130 Cal. 667, the Supreme Court of California uses the following language: "The granting or denying a motion to set aside a default of a defendant is so largely a matter of discretion with the trial court that, unless it is clearly made to appear that there has been an abuse of this discretion, this court declines to set aside its order."   The same language is adopted in the cases of *Winchester* v. *Black*, 134 Cal. 125; *Howe* v. *Independence M. Co.*, 29 Cal. 72; *Coleman* v. *Rankin*, 37 Cal. 247.

*Alfred Chartz*, for Appellant, in reply:

I.   Counsel for respondent has judiciously avoided reference to the cases on which appellant stands.   (*State* v. *Consolidated Virginia Mining Company*, 13 Nev. 194.)   That case has not as yet been reversed, but can be at any time.

By the Court, Talbot, J.:

On May 14, 1904, this action was commenced and garnishment levied upon moneys in a bank in Reno; but summons was not served at that time because plaintiff's attorneys were informed that no certificate of appointment of a state agent upon whom service could be made had been filed by the defendant corporation.   From the affidavits which were presented on the hearing of the motion it appears that one Roeder, who was the secretary and general manager of the company, had left Boston on May 14, 1904, informing the directors that he was going to the mines at Montezuma, Nevada, but that, instead of doing so, he absconded, owing the company over $12,000, judgments for which and a warrant for his arrest have since been obtained in Massachusetts, and that he could not be found.   One Rowley, a director and general counsel for the defendant, came from Boston and appeared at the office of the plaintiff's attorneys, in Reno on July 1, 1904, and stated that he had come west for the purpose of trying to adjust the claims against the company. He offered an amount in settlement of plaintiff's demand

which his counsel were unwilling to accept or recommend to their client. At that time one of the attorneys for the plaintiff gave Rowley copies of the complaint and summons, told him that the company was liable for not having the authority of a state agent on file, and requested him to have the appointment of such an agent made and filed, so that service could be obtained, or that he appear in the action and answer or waive service. He promised to have such appointment filed and to make such appearance if the president of the company in Boston were not able to settle with the plaintiff at West Seattle; but neither he nor any of the officers of the company endeavored to make this assurance good or to compromise with the plaintiff. Rowley returned to Massachusetts, and states in his affidavit that from September 15th until October, 1904, he was too ill to do any work.

Although the attorneys for both parties were informed and may have believed in July that there was no state agent on whom service could be made, those for the plaintiff ascertained later that the appointment of Alfred Chartz as such agent was, and since the previous December had been, on file with the secretary of state, and they had him served on October 24, 1904. He mailed the copies of the complaint and summons to the Montezuma Mining Company, 373 Washington street, Boston, Massachusetts, which he believed to be the office of the defendant. After lying in the postoffice there for about a month, they were returned to him stamped, "Present address unknown." He then remailed them on December 12, 1904, to M. L. Roeder, 373 Washington street, that city. Some days later he received a letter from Rowley, at 638 Old South Building, Boston, inquiring about some timber lands or contracts that belonged to the defendant, and to this he replied, informing Rowley regarding the service and mailing of the copies of the summons and complaint, and the latter wired him promptly, and on December 20, 1904, to defend the suit and interpose a demurrer, and telegraph the Boston postmaster to deliver the papers to him. Rowley secured them on the next day and mailed them back to Chartz, who, before their arrival, by mistake and thinking that the suit was pending in Esmeralda County, where the company's

properties are situated, forwarded a demurrer to the clerk of
the court at Hawthorne.   Later, and after the return of the
papers from Rowley to Chartz, and before the entry of judg-
ment, and previous to the making of an order for the taking
of the testimony of the plaintiff by deposition in the State of
Washington, the motion to set aside the default, and affidavits,
with a copy of the proposed answer on the merits, were filed.

It is not claimed that the giving of the copies of the com-
plaint and summons to Rowley in Reno on July 1st was a
sufficient service, or authorized the entry of a default; and
the attorneys for both parties understood to the contrary.
Those for the plaintiff wrote Rowley later, and, in August,
urging that he appear in the action or have a state agent
appointed upon whom service could be made.   The default
was entered on December 10th on proof only of the service
upon Chartz on October 24th.   The defendant had knowledge
of the pendency of the suit from the time the copies were given
to Rowley in July, if not earlier, and for more than five
months before the default was entered, and its attorney,
although excusable during the time he was ill, was derelict
in failing to perform a moral obligation in not having within
a reasonable period made, or induced the officers of the com-
pany to make, some effort to settle with the plaintiff, or,
failing in this, in not having appeared in the action, or filed
the appointment of a state agent, as he had promised; but
this stipulation could not be enforced, because it was not in
writing, as required by rule 27 of the district courts. (*Haley
v. Eureka County Bank,* 20 Nev. 425, 22 Pac. 1098.)   The
promise, also, as did the letter of similar import written by
Rowley to the attorney for the plaintiff, depended upon a
contingency which had no specified time for its performance.
No provision for entering default or for other penalty was
provided in the event that the attorney failed to have the
case settled, and also omitted to appear in the action and
have a state agent appointed upon whom service could
be made, as he had agreed.   The ascertainment by counsel
for plaintiff later that Chartz was such agent, and the
service upon him, relieved plaintiff of any necessity for
having such appearance or appointment made.   Under the

well-settled rule that penalties and forfeitures are not favored
or enforced unless expressed, the defendant did not become
liable for any when none was provided, and there was no
written stipulation, and the defendant did not lose its right
under this agreement to have the default set aside, if otherwise
entitled, when no such result was specified or contemplated.

Although the company knew for more than five months
that the suit was pending, still it was not aware that service
of summons had been made or that necessity for answering
existed until about ten days after the default had been
entered. Upon receipt of knowledge that service had been
secured, the defendant proceeded with due diligence and
promptly wired the local attorney to defend. As state agent
he had forwarded the copies of the complaint and summons
in due time to the supposed address of the defendant. We
think the fact that these papers, and consequent upon them
knowledge of their service, failed to reach the company until
after default had been entered, because they had been sent to
the address of Roeder under the belief that he was still the
general manager of the company, when he had recently
defaulted and absconded, should not deprive the defendant
of making a defense and having the claims and rights of the
parties determined by trial. The sending of the papers to
Roeder without knowledge of his flight, after he had managed
the business of the company in this state, caused the failure
to answer in time, and is excusable; and to deny the privilege
of defending because an answer or demurrer was not filed
before knowledge of service, would be unnecessarily severe
under the circumstances shown. As the taking of the depo-
sition of the plaintiff was to be ordered and secured before
judgment could be entered, it would seem that the opening
of the default could have caused little delay or hardship.

Every case depends largely upon its own facts, but courts
are liberal in relieving defendants from defaults when they
offer a good defense and have not been guilty of inexcusable
delay. This is especially true under statutes which, like sec-
tion 68 of our practice act (Comp. Laws, 3163), provide that
the court may allow an answer to be filed after the time
limited, and may upon such terms as may be just relieve a

party from a judgment, order, or other proceeding taken against him by mistake, inadvertence, surprise, or excusable neglect, and as heretofore held by this court stronger reasons exist for reversing an order refusing to set aside, than one opening, a default. (*Howe* v. *Coldren*, 4 Nev. 175; *Horton* v. *Mining Co.*, 21 Nev. 188, 27 Pac. 376, 1018; *State* v. *Mining Co.*, 13 Nev. 202; *Will* v. *Water Co.*, 100 Cal. 344, 34 Pac. 830; *Griel* v. *Vernon*, 65 N. C. 76; *Hildebrandt* v. *Robbecke*, 20 Minn. 100; *Bigler* v. *Baker*, 58 N. W. 1026, 24 L. R. A. 257; *Westphal* v. *Clark*, 46 Iowa, 264; *Peterson* v. *Railroad Co.*, 177 Pa. 335, 35 Atl. 621, 34 L. R. A. 593.)

The order is reversed, and the district court will allow the defendant to answer and defend on such terms as may be just and reasonable.