SANTA CLARA MINING ASS'N *v.* QUICKSILVER MINING Co.[1]

*(Circuit Court, D. California.* October 6, 1882.)

1. MEXICAN GRANT—LEGAL AND EQUITABLE TITLE.

The holder of a Mexican grant containing a quicksilver mine conveyed the mine, together with 1,000 acres of land surrounding the mine, to A., who went into possession, and he and his grantees continued in possession, working the mine for 25 years. After such conveyance the holder of the grant executed a second conveyance to B., also embracing the mine and the land before conveyed to A. The grantees of B. presented the grant for confirmation, which was duly confirmed, and a patent in due form was issued to the confirmees. *Held,* that the legal title derived under the patent would be controlled for the benefit of the grantees of A., who held the better title under the first conveyance.

2. LOCATION OF LAND INDEFINITELY DESCRIBED.

Where a mine, together with 1,000 acres of land, "around, circumjacent, and adjoining said mine," is conveyed by the owner of a larger tract, the land will be located as nearly as practicable in a square form around the mine, taking the mine as the center of the location, and the grantor, by subsequent conveyances of the larger tract in two parts to other parties, cannot affect this right of location by the prior grantee.

3. MINING PARTNERS—TENANTS IN COMMON.

Where a mine, together with the surrounding lands, is conveyed to, and the mine is worked by, an unincorporated association of individuals in the usual mode, as in the case of mining partnerships in California, the members of the association are tenants in common of the mine and the land so held.

4. SALE UNDER DECREE OF PROPERTY OF MINING PARTNERSHIP.

Where a bill is filed by a member of a mining partnership to wind up the affairs of the association, some of the members being omitted from the bill because of the impracticability of bringing them all before the court, and a decree is made dissolving the association, directing the mines and lands of the company to be sold, the debts to be paid, etc., and a sale of the mines and lands of the association is made in pursuance of the decree, the title to the undivided interests in the mine and lands of those not parties to the suit will not be affected by the decree and sale.

In Equity.

*Wm. Matthews,* for complainant.

*D. M. Delmas,* for defendant.

SAWYER, J. This is a bill to control the title derived under a patent of the United States issued to the Guadalupe Mining Company. The Mexican grant of the land was made to one Larios in 1845. He afterwards conveyed to a man by the name of Cook. Cook subsequently conveyed to an association of persons, not a corporation, called the Guadalupe Mining Company, a mining partnership, or joint-stock company. The Guadalupe Mining Company presented its claim for confirmation and obtained a patent. Cook, prior to the conveyance under which this patent was obtained, had conveyed 1,000 acres embracing the mine—1,000 acres surrounding this mine —by an indefinite description, "around, circumjacent, and adjoining

[1] From 8th Sawyer.

said mine." That title has passed to the complainant in this case. That title passed through one Gray and wife, and complainant in this case has been in possession for 25 years under that title. The defendant, claiming under the patent, commenced sundry suits to recover the possession of the mine, and this bill is filed to control the title in favor of complainant, and restrain the prosecution of those suits at law. I am satisfied, upon an examination of the case, that the complainant is entitled to the relief sought, as to the 1,000 acres of land.

There is a question as to the location. At the time when this conveyance of the 1,000 acres was made the title to the entire grant was in Cook. Subsequently he conveyed in two parts to different parties; one, the northerly part, he conveyed to the grantors of the parties who have acquired the patent—the Guadalupe Mining Company. The other part was conveyed to somebody else. It is contended, on the part of complainant, that this 1,000 acres of land should be located on the portion patented to the Guadalupe Mining Company. On the other hand, it is contended that placing the principal mine in the center of the tract of land, it should be located, so far as practicable, so as to leave it in a square form, with the mine in the center. This 1,000 acres having been sold when the grantor owned the whole of the land, his subsequently dividing the grant into parts could not transfer the location to the part subsequently conveyed to the Guadalupe Mining Company. Locating it in this form, it will not cover the whole of the land patented by the mining company. There is a diagram made from a survey by Ross Brown, which I think correctly locates the 1,000 acres. This location shows the 1,000 acres located in a compact form, as nearly square as practicable, which embraces portions of both parts of the grant, taking the mine as the center of the location; and so far as that land is embraced in the patent to the Guadalupe Mining Company, I think the complainant is entitled to the relief sought—a conveyance of the legal title and an injunction against the prosecution of the suits at law. Under the decisions heretofore made in such cases as *Estrado* v. *Murphy*, *Samon* v. *Symons*, and that class of cases, complainant is also entitled to the relief sought as to those lands embraced within the Ross Brown survey, included in the patent, and within the lands described in the bill.

That leaves some other portions of the land described in the bill without the 1,000 acres so located. It is insisted by respondent's counsel that, as to those lands, the bill must be dismissed, because if the complainant has a title at all, as is alleged in the bill, it is a legal title, and complainant has a legal remedy. I think that the complainant having been in possession for the last 25 years, and being in possession at the commencement of the suit, it alleges such a case against an adverse claimant as entitles the complainant to proceed under the statute to have the adverse claim determined and

its title quieted with reference to that portion of the tract. The facts alleged are sufficient to give jurisdiction on that ground. The 1,000 acres are also embraced in this title.

The title of the complainant to that portion depends upon the sale under judicial proceedings in the case of *Hallam Eldridge* v. *Sansevain and others.* That was a bill filed to close up the affairs of another mining organization to which many of the members were made defendants, but some were omitted, it being alleged that the parties were numerous, and many of the real parties could not be ascertained, and they were, therefore, dispensed with, and the court proceeded to wind up the affairs of the mining copartnership, and placed the property in the hands of a receiver, who afterwards sold the lands out under a decree of the court, and they were conveyed to the purchaser. The title derived through that conveyance is vested in the complainant, and the allegation is that they have been in the possession ever since.

My conclusion upon that branch of the case is that complainant is entitled to a decree establishing and quieting the title to all of the undivided portions of the land, the title to which was in the defendants to that suit, who were served, or who appeared at the time or during the pendency of the suit, and to such others as make no resistance to the decree; but I think the Quicksilver Mining Company is entitled to a decree dismissing the bill as to those undivided parts held by it, derived from persons who were not parties to the suit, and were, therefore, not bound by that decree. That was a mining partnership, and the interests held in the land were in the nature of a tenancy in common, so far as the title is concerned, and I do not see how their title could be affected in their absence. It seems to me that this is the effect of the decree as laid down by equity rules 47 and 48 of the supreme court, which are founded upon a statute passed for such cases a few years before an adoption of the rule, and the rule established by decisions in such cases as *Shields* v. *Barrow*, 17 How. 139, and *Barney* v. *City of Baltimore*, 6 Wall. 280. In my judgment the title of the absent parties could not be affected without their presence as parties; but as to all except those parties, the complainant is entitled to a decree establishing and quieting its title derived under those proceedings as to the undivided interests in those parts lying both outside and inside of the patent, and within the lands described in the bill of complaint and in the conveyances in that case.

A decree will be rendered accordingly, and counsel for complainant will prepare the decree in accordance with these suggestions and submit it to Mr. Delmas.

The complainant will recover costs.