GALIGHER, Respondent, *v.* LOCKHART, Appellant.

[Argued July 1, 1891.  Decided August 3, 1891.]

Partnership — *Accounting.* — Where one member of a mining partnership notifies the other that he will not carry on the partnership operations any longer, and will not be liable for any debts thereafter contracted in developing their mines, he is not liable upon an accounting with his copartner for any expenses incurred after the date of the notice.

Same — *Liability of incoming partner.* — An incoming partner is not liable to another partner for the value of the latter's services rendered to the firm prior to his coming into the copartnership, where there was no agreement between the former partners that such services should be compensated, and the incoming partner assumes no liability therefor. In such case the same rules apply to mining as to other partnership compacts.

*Appeal from Fifth Judicial District, Beaverhead County.*

Action to dissolve a mining partnership and for an accounting. The cause was tried before GALBRAITH, J., without a jury. Plaintiff had judgment below.

*Forbis & Forbis,* for Appellant

The court found that on the thirtieth day of June, 1887, the defendant Lockhart notified the plaintiff Galigher, in person, that he would not longer carry on the partnership operations, and that he would not be liable for any debts or expenses contracted by the said Galigher in the mining of the said claims, and also found that on the thirtieth day of June, 1887, there was a full settlement and accounting as to the partnership between Chapman and Thompson and plaintiff, and that Chapman and Thompson, on that date, paid their full share of the expenses incurred prior to that time. Notwithstanding these findings, the court insists that Lockhart must remain a partner, contrary to his will, and that he must thereafter contribute to Galigher two thirds of all expenses incurred by the said Galigher in mining the property, and rendered a judgment against the defendant Lockhart for two thirds of all expenses incurred subsequent to the date when Lockhart notified Galigher that he would not longer be responsible under the terms of the partnership. The rule is certainly well settled in ordinary partnerships that, whatever the contract of partnership may be, any partner may, at will, dissolve the same. We know of

no authority to the contrary relating to mining partnerships, but the authorities relating to mining partnerships fully sustain the rule applicable to ordinary partnerships. (*Carter* v. *Whalley*, 11 Morr. Min. Rep. 262; *Slemmer's Appeal*, 11 Morr. Min. Rep. 437; *Crawshay* v. *Maule*, 11 Morr. Min. Rep. 223; *Vice* v. *Fleming*, 11 Morr. Min. Rep. 241.)

In addition to holding Lockhart responsible for debts contracted subsequent to the dissolution, the court also held that Lockhart was personally responsible for debts contracted prior to his entering the partnership, and rendered a judgment against the defendant Lockhart for the salary of the plaintiff Galigher from the first day of September, 1886, to the fifteenth day of December, 1887, whereas, Lockhart did not become a partner under any construction until June 30, 1887. Under no circumstances was Lockhart responsible for the salary of Galigher prior to his entering into the partnership. (*Babcock* v. *Stewart*, 11 Morr. Min. Rep. 447; *Duryea* v. *Burt*, 11 Morr. Min. Rep. 395.) The fact that Lockhart ordered work suspended as soon as he purchased the interest shows that there was no express agreement on his part to pay Galigher a salary; yet, notwithstanding this state of facts, the court rendered a judgment against Lockhart for the full salary claimed by the plaintiff, both before and after Lockhart purchased. The law relative to compensation of partners for services is the same whether the partnership be a commercial or a mining one. (*Godfrey* v. *White*, 11 Morr. Min. Rep. 562.)

*Toole & Wallace*, for Respondent.

The partnership was for a definite purpose; that is, the ascertaining whether certain veins of ore were in a particular place, and if these ore veins were in bodies. After this was done the mine was to be sold. A partner cannot dissolve a partnership created for a definite purpose at his mere will, otherwise it would be very injurious, inequitable, and unjust to his copartner. If there was any just ground of dissolution, he should have come into court and demanded it. (Story on Partnership, 275; Bates on Partnership, § 597.) In a case like this, where the contract of partnership is for a definite

period, the partner has a right to specific performance. (23 Am. Law Reg. 689.) There was an express agreement between Chapman, Thompson, and Galigher to form a partnership; and even in the absence of such agreement, the fact that they combined to work the claims was in itself sufficient to constitute a mining partnership. (*Skillman* v. *Lachman,* 23 Cal. 198; 83 Am. Dec. 96; *Kahn* v. *Central Smelting Co.* 102 U. S. 641.) The transfer to Lockhart by Thompson and Chapman of their shares in the property did not operate as a dissolution of the partnership, as a mining partner may convey his interest without dissolving the partnership. (*Duryea* v. *Burt,* 28 Cal. 559; *Nisbet* v. *Nash,* 52 Cal. 340; *Skillman* v. *Lachman, supra; Kahn* v. *Smelting Co. supra.*) The appellant is therefore liable to the respondent, (1) for two thirds of the expense of working the mine from June 27, 1887, until December of the same year, when the mine closed down; (2) for two thirds of the expenses contracted by the respondent in keeping the mine in a workable condition and which inured to the benefit of appellant; (3) for a reasonable compensation for respondent's services as superintendent of the mine from September, 1886, until December, 1887; (4) for two thirds of the attorney's fees expended by respondent in defending the title to the property.

HARWOOD, J. — The object of this action was to obtain a dissolution of copartnership; an accounting between the copartners, and also a partition of certain mining claims; but the question of partition was abandoned by the consent of all parties, and the action proceeded as to the other purposes.

The evidence introduced at the trial, and the findings of fact by the court, are before us for review on appeal from the judgment, and from an order overruling appellant's motion for new trial.

It appears from the evidence and findings of fact that certain mining claims were owned in equal undivided interests by plaintiff and Chapman and Thompson; that said owners engaged in a copartnership arrangement to do certain development work upon said mining claims, at the expense of said owners in equal proportions. The object of said development work was to put the mining claims in salable condition; but

no period of time was agreed upon during which development work was to be prosecuted, nor was it agreed as to what extent such work should be prosecuted. Under said arrangement a large amount of development work was done upon the mining claims in question prior to June 30, 1887. On that date, defendant Lockhart succeeded, through conveyances, to the interest in said mining claims theretofore owned by said Chapman and Thompson, and thereby became the owner of an undivided two-thirds interest in said property, and also succeeded to the position theretofore occupied by said Chapman and Thompson in said copartnership arrangement, as to future operations thereunder.

Upon the trial the court found that on said thirtieth day of June, 1887, a full accounting and settlement was made as to the partnership affairs between plaintiff Galigher and Chapman and Thompson, and that Galigher paid his proportion of expenses incurred prior to that date, and that defendant Lockhart paid for Chapman and Thompson their full share of expenses incurred in developing said mining claims prior to said date, except the compensation claimed by said Galigher for his services. The court further found that on said date plaintiff Galigher was notified by defendant Lockhart that he would not carry on the partnership operations any longer, and that he would not be liable for any debts or expenses contracted by said Galigher in working upon said mining claims.

These findings are fully supported by undisputed evidence, which shows that, at the time said notice was given, defendant had examined said property, and settlement of all prior expenses was made as aforesaid, except the claim of plaintiff for services, and plaintiff was then informed by defendant that he was satisfied the property being developed was not worth anything; that defendant advised shutting down work thereon, and declared he would not prosecute the work any further, and would not be responsible for any further expenses. Plaintiff's reply to said notice was that he proposed to continue work on said claims, and that he would endeavor to make defendant pay his proportion of the expense thereof.

Appellant contends that, under said state of facts disclosed by the evidence and findings of the court, it was error for the

court to hold, as it did, that defendant was liable, in an accounting between plaintiff and defendant, for two thirds of the expense involved by plaintiff in work upon said mining claims after the date of said notice.

We think appellant's position upon this point is fully sustained by principles of law, and we so hold. (*Carter* v. *Whalley*, 11 Morr. Min. Rep. 262; *Slemmer's Appeal*, 11 Morr. Min. Rep. 441; *Crawshay* v. *Maule*, 11 Morr. Min. Rep. 223; *Vice* v. *Fleming*, 11 Morr. Min. Rep. 241.)

Respondent's counsel cites no cases which support the converse of appellant's proposition, if, indeed, any cases could be found to support that position. The trial court virtually held as we do, in another conclusion of law, wherein it was held that the partnership was dissolved in January, 1888, by defendant giving "public notice of the repudiation of the said contract and partnership." The public notice could have had no more potency, as affecting the rights and relations of the partners themselves, than a private notice. It follows that the judgment ought to be so modified as to eliminate therefrom all charges against defendant involved in working said mining claims subsequent to June 30, 1887.

Another point insisted upon by appellant is that the court below erred in holding appellant liable for salary to plaintiff for services during a period prior to the time appellant came into said copartnership. This was error for two reasons: *First.* There was no showing that it was ever agreed in reference to said partnership arrangement that plaintiff, one of the copartners, and an owner in common of an interest in said property, should receive compensation for services which he might render in and about said work. This charge could only be sustained against his copartners, Chapman and Thompson, by virtue of a special agreement to that effect. (2 Bates on Partnership, § 770; Parsons on Partnership [3d ed.], 250; *Babcock* v. *Stewart*, 11 Morr. Min. Rep. 447.) Upon this point, it appears that the same rules apply to mining as to other partnership compacts. (*Duryea* v. *Burt*, 11 Morr. Min. Rep. 395.) *Secondly.* The charge for services of plaintiff rendered prior to the time appellant came into said copartnership could not lawfully be maintained against appellant unless he assumed and agreed to pay

the same, which is in no way shown. Respondent's counsel admit in their brief that an incoming member into such a co-partnership arrangement would not be personally liable for indebtedness incurred prior to his coming into the copartnership. (*Babcock* v. *Stewart, supra.*) As to the claim of plaintiff for services rendered by him about said work after June 30, 1887, that falls with all other expenses involved after that date, under the views above expressed. It follows, therefore, that all charges against defendant for services of plaintiff in and about said work, both before and after June 30, 1887, should be eliminated from the judgment rendered against defendant.

We do not find reason for disturbing any other findings of fact or conclusion of law made by the court below, which appellant insists were erroneous.

According to the findings and conclusions of law not disturbed, the account between plaintiff and defendant stands as follows: Defendant should be charged with two thirds of the $250 paid by plaintiff, or for which he became personally responsible, in defending the title to said property, namely, $166.66; and this is the only item remaining against defendant, according to the findings sustained. According to the findings, defendant should be credited with items as follows: One third of $504.50 paid out by defendant on debts of the firm existing prior to the time he became a member, one third of which, or $168.16, is rightfully chargeable to plaintiff; also with two thirds of $400 worth of goods and provisions of the firm, which plaintiff took and converted to his use in working said claims after June 30, 1887, two thirds of which was the property of defendant, valued at $266.66, and for which defendant should be credited in this accounting. Defendant should also be credited with two thirds of the value of $311 worth of property of the firm taken under attachment for debts contracted by plaintiff after June 30, 1887, two thirds of which, or $207.32, was the property of defendant, and should rightfully be credited to him in this accounting. All these credits in favor of defendant aggregate the sum of $642.14, from which should be deducted two thirds of said $250 expended by plaintiff in defending the title to said property, viz., $166.66. This deduction leaves a balance of $475.48 in favor of defendant. In other words, as

the findings show, defendant owes plaintiff $166.66 for moneys properly expended in said partnership matters; and plaintiff owes defendant $642.14 for moneys which defendant properly paid out for plaintiff's benefit, and for property belonging to defendant, which plaintiff wrongfully took and converted to his use, or caused to be taken by attachment for debts which plaintiff wrongfully contracted against said firm. These accounts being offset against each other, leave a balance of $475.48 in favor of defendant, for which he is entitled to judgment against plaintiff as a result of said accounting.

It is therefore ordered that the judgment rendered by the trial court be reversed, and that judgment be entered in favor of defendant and against plaintiff for the sum of $475.48, and costs.

*Reversed.*

BLAKE, C. J., and DE WITT, J., concur.