McLaughlin et al., Appellants, v. Thompson, Appellee.

2  135
8  547

1. Prospecting Contract—Interest acquired.

Two parties entered into an agreement to do prospecting work which contemplated a joint prosecution of the enterprise until a valid location was made.   One quit the work before the discovery of mineral and the other carried it on until a discovery and a valid location was made.   *Held,* that no interest in the property vested in him who had retired, unless he had provided therefor by an agreement with the discoverer.

2. Evidence of Facts, not admissible without Pleading.

Evidence of facts not pleaded is not admissible, and if admitted will not support a decree.

3. Laches.

A delay of seven years to bring an appropriate action to recover his interest in a mining claim is an equitable bar to an action, where the plaintiff had failed to contribute labor or money to the enterprise, even if the discovery was made by one with whom he had a contract giving him such interest.

4. Same.

Reasonable diligence is always necessary to move a court of equity. The strongest equity may be forfeited by laches or abandoned by acquiescence.

*Appeal from the District Court of Pitkin County.*

THE facts are fully stated in the opinion of the court.

Messrs. WILSON & STIMSON, Mr. CLINTON REED, Mr. CHAS. S. THOMAS and Messrs. BRYANT & LEE, for the appellants.

No appearance for the appellee.

BISSELL, J., delivered the opinion of the court.

There is no appearance for the appellee. His cause is without equity; and he could not have successfully supported the decree, though judgment passed in his favor. In the latter part of November, 1880, Thompson and James McLaughlin started prospecting work on Smuggler mountain on a piece of ground which they named the Jay Gould. The agreement contemplated, although it was not thus directly specified, that they should prosecute the work until they could make a valid location. It will be well to note here two allegations in the complaint, one of which may be said to be supported by the proof, and the other to be wholly variant therefrom. The first is, that Thompson was to assist in doing the "discovery work" on the location. Just the extent to which the pleader intended to go by that averment is not very manifest. It is palpably true under the mining statutes that work properly within that description must be continued until there is uncovered a vein or deposit of mineral. It is not an unfair construction of the pleading to take the allegation as intended to be broad enough to embrace whatever under the mining statutes would be included in this term. Under this construction, then, the plaintiff averred that he

and McLaughlin agreed to sink the discovery shaft to mineral and thereby make a valid location. This allegation seems to be fairly within the purview of Thompson's own testimony, and to be substantially supported by the evidence. There is another averment about which so much cannot be said. Generally it states that by the terms of the agreement McLaughlin was to do Thompson's share of the assessment work until he should dispose of his interest. This is totally unsupported by the testimony. It will be observed that this part of the alleged agreement does not necessarily exclude the idea that Thompson remained obligated to do his part of that discovery work which must precede a valid location. This much he is bound to do by the contract as he states it, and by the terms of it according to his own evidence. This is an important consideration, on the hypothesis which will be subsequently stated, that there was an absolute failure to acquire any title which McLaughlin was bound to protect, even under the agreement to do the annual labor, had that part of the contract been sustained by sufficient proof. The work was continued on the claim until about election time in November, when Thompson left Aspen and went to Leadville. At this time the discovery shaft had been sunk some distance in the wash, probably somewhere between 25 and 40 feet. At this time Thompson ceased to do work, or to contribute to the expense of it, and this situation gives rise to one of the controversies in the case. To overcome the very apparent legal difficulty respecting his title, he testified at the trial that the agreement between him and McLaughlin was, that McLaughlin should take up the work at the point which he had reached when the contract was made, and sink the shaft to mineral for a half interest in that very shadowy thing, a mining location without any discovery. Under the pleadings he was not entitled to make proof of any such agreement. He had not averred it and he should not have been allowed to prove it. There was no application made to amend the complaint to correspond with the proof, and the case stands with a decree entered upon testimony which could

not have been legitimately offered under the pleadings.  But the case in this aspect was not so supported by testimony as to entitle the plaintiff to a decree.  It was directly disputed by the defendant McLaughlin, whose denial was supported by the whole conduct of the plaintiff.  It is probably true that this court would be indisposed, in opposition to the finding of the court in regard to the facts, to disturb the decree because it was not in its judgment supported by the evidence. Since the cause must be reversed on other grounds, the error committed in rendering a decree upon evidence which contradicted the case as the plaintiff laid it, justifies the court in stating that in its judgment this part of the plaintiff's contention is entirely unsupported.  But for this reluctance to disturb the findings of a trial court upon the evidence, the reversal would be put upon this naked proposition, viz.: That at the time Thompson quit work on the claim in November, 1880, there had been no discovery of mineral, and since he failed to continue the prosecution of his discovery work to mineral, or to contribute thereto, no subsequent discovery and valid location by the labor of his original partner, without contribution from him, or some agreement with regard to it, could enure to his benefit.  It is a very common notion among prospectors in this country, that if they sink a shaft, which they call a discovery shaft, to a depth of more than ten feet, and put up their stakes, they acquire thereby some sort of an interest in the public domain, although within the limits of their shaft or cut, there may be no indications whatsoever of a vein or mineral deposit, and work has ceased. Whatever may be the comity in respect of this matter among miners and prospectors, as a matter of law such a location is absolutely worthless for any purpose.  It is equally true that if two men enter into a prospecting agreement which provides for their joint prosecution of the labor, in law this agreement will be taken to include the continuance of the work until a valid location is made on a legal discovery. Should one of the prospectors quit the work, and the other one continue until he finds a vein, the reward is his, and in

it the laggard will have no interest, unless he has provided therefor by an agreement with the diligent partner.

Since this.position is predicated upon a disagreement with the trial court as to the evidence, the judgment will not be rested solely on this proposition. There is another principle of equity jurisprudence which is equally conclusive upon the plaintiff's rights. The doctrine of laches and its consequences is as well established as any other rule in equity. It is not often that a case comes before a court which so emphatically demands the application of the principle as the one under consideration. Thompson quit work early in November, 1880. He returned to Aspen in the spring of 1881 and remained through the summer. Before he got back, McLaughlin, who had continued the work during his absence, completed the location and filed his location certificate. During Thompson's stay McLaughlin was engaged in sinking the shaft. The date of the actual finding of mineral is not very clear. At all events the location certificate was on record, and did not contain the name of Richard Thompson. McLaughlin carried on the work in conjunction with Markell while Thompson was in Aspen. The shaft was sunk upwards of one hundred feet, and a drift of about fifty feet was run from the bottom of it, and in many ways there were indications of a very vigorous prosecution of the enterprise, and the expenditure of considerable money on the part of those in possession. Thompson paid no attention to it, manifested no interest in the matter, made no assertion of any claim or right with respect to the property, and in many ways failed to do those things which any miner would have done if he thought he still retained an interest in the claim. In the fall of 1881 he left Aspen and did not return until July, 1888. During all this time he gave no heed to the property, paid no part of the expenses of the location and development, and contributed nothing whatever towards the annual labor required by the mining statutes. It is true that in his complaint he sought to avoid the great force of this neglect by an averment which put the

burden of doing the entire work on McLaughlin. He did not prove it, nor did he offer any evidence whatever to support this allegation. This fact may then be taken to the extent of its fullest significance as bearing upon the matter of the laches. By the joint efforts of McLaughlin and Markell the location seems to have been developed by the discovery of mineral into a valid mining claim. They applied for a patent in 1883 and obtained a receiver's receipt. These proceedings did not stir Thompson to the assertion of his rights and he did nothing until he filed this bill in September, 1888, for the specific performance of his alleged contract. There were sundry complications about the title, springing from a transfer which had been made by McLaughlin to Ottawa Brown. Nothing will be gained by either stating or discussing the effect of the conveyance, or the interest acquired by it, since the general finding will leave her rights and those of McLaughlin to be settled *inter partes*.

Reasonable diligence is always necessary to incite the activity of a court of equity. " The strongest equity may be forfeited by laches or abandoned by acquiescence." Whenever a party desires to enforce an equitable interest in property so fluctuating and uncertain in value as a mining claim, he must be careful to avoid an unreasonable delay. The true doctrine in these cases was very fully and accurately expressed in an able opinion by the present Chief Justice of the supreme court, and re-announced in the latter opinion of *De Mares v. Gilpin, infra.* It need not be restated nor would it be profitable to discuss the reasons supporting the principle. The facts of the present controversy compel a rigid and unhesitating application of the rule. Thompson slept upon his rights for such a length of time that he cannot be permitted to come into a court of equity and ask a decree: *Great West Mining Co. v. Woodmas, of Alston Mining Co.*, 14 Colo. 90 ; *De Mares v. Gilpin*, 15 Colo. 76.

Any further citation of authorities on this subject would be useless, since these two cases fully express the law on this

subject. The plaintiff may not recover, either under the case as he made it, or under the proofs concerning his delay.

The case is reversed and remanded, with directions to the court below to enter a decree in conformity with this opinion.

*Reversed.*