[Sac. No. 671. Department Two. — September 10, 1901.]

JACOB FROWENFELD, Executor, etc., Respondent, v. ELIZABETH HASTINGS, Appellant.

LIEN UPON PROCEEDS OF MINE — ADVANCES BY PART OWNER — CONTRACT EXCLUDING PERSONAL LIABILITY — ABSENCE OF BREACH — FORE-CLOSURE. — Under a contract which gave the management of a mine to one part owner, and a right to reimbursement for all advances from the proceeds of the working of the mine, but which expressly excluded any personal liability of the other part owners for any part of such advances, and did not guarantee any sufficiency of proceeds, so long as the contract is not broken by the other part owners, no lien arises for advances against their interests which can be enforced otherwise than by working the mine, and no action will lie under the contract for the foreclosure of a lien upon and sale of their interests.

APPEAL from a judgment of the Superior Court of Sierra County. Stanley A. Smith, Judge.

The facts are stated in the opinion of the court.

Bishop & Wheeler, for Appellant.

The complaint shows no breach of the contract by the defendant, and therefore does not state a cause of action. (2 Jones on Mortgages, 4th ed., sec. 471; *Steinbach* v. *Leese*, 13 Cal.

363, 367; *Church* v. *Shanklin*, 95 Cal. 626, 629; *Van Loo* v. *Van Aken*, 104 Cal. 269.) A promise to pay a demand out of the "proceeds" of specific realty gives no lien upon or interest in the realty. (*Hamilton* v. *Downer*, 46 Ill. App. 541.) A contract for payment of a demand out of the proceeds of specific property does not guarantee a sufficiency of such proceeds, unless the contract expressly so declares. (*Gibb* v. *Probst*, 2 Cal. 115; *McConnell* v. *Denver*, 35 Cal. 365, 371;[1] *Chung Kee* v. *Davidson*, 102 Cal. 188, 193.)

C. W. Cross, for Respondent.

The plaintiff has an equitable lien for his advances upon the interests of the other part owners, which he is entitled to enforce in equity by foreclosure. (3 Pomeroy's Equity Jurisprudence, secs. 1233–1240.)

McFARLAND, J.—This is an appeal by defendant from a judgment in favor of plaintiff. The action is to enforce an asserted lien upon the defendant's undivided interest in certain mining property, for advances of money alleged to have been made by plaintiff's testator, Goldstein, who was the owner of an undivided interest in said property. The action is based on a certain written contract made by Goldstein, the party of the first part, and the defendant herein and Mary Martha Hickey (now Mrs. Posey), also an owner in the property, parties of the second part. A similar independent action was also brought by appellant against Mrs. Posey, and an appeal by her from a judgment against her (Sac. No. 762) was submitted with the case at bar. A decision in one of the cases determines the other. The judgment in both cases enforces the alleged lien, by decreeing the sale of the defendant's interest in the property to satisfy certain amounts of money found to have been advanced as alleged. A demurrer to the complaint was filed on the general ground that it does not state facts sufficient to constitute a cause of action, and also on several special grounds.

The contract in question, which is set forth in full in the complaint, was executed on October 17, 1885. It recites that the parties are the owners of certain mines, ditches, water rights, timber-lands, saw-mills, and improvements thereon, known as

---

[1] 95 Am. Dec. 107.

the properties of the Brandy City Mining Company, and that Goldstein owned a ten-twelfths undivided interest therein, defendant Mrs. Hastings one undivided twelfth, and Mrs. Hickey an undivided twelfth. It then recites that during six years next preceding the date of the contract the expenses of working the property had exceeded the value of the products "in a considerable amount (the exact amount being shown by the books of the company), of which the share chargeable against the interest of said Elizabeth Hastings is one twelfth, and the share chargeable against the interest of Mary Martha Hickey is one twelfth," and that it was deemed advisable for the development of the property to run a certain tunnel and to make other improvements, and perhaps to acquire other properties, which would require the expenditure of further sums of money, which Goldstein was willing to advance. It is then covenanted and agreed that "the said sum chargeable as aforesaid" against the one-twelfth interest each of Mrs. Hastings and Hickey "shall remain as a charge against their several and separate interests in said property," and that their respective parts (one twelfth each) of money which had been advanced and paid out by Goldstein over and above the amounts which he had received from the property should bear interest from the date of the contract until paid at the rate of twelve per cent per annum. In this part of the contract there is the following clause: "It is distinctly understood that said parties of the second part are not, nor is either of them, personally liable to said party of the first part for the payment of said sums of money, or any part thereof."

In the subsequent and more important part of the contract it is provided that Goldstein is to advance all such moneys as from time to time shall be required for the construction of the tunnel and other purposes above mentioned, and to pay and discharge all debts "contracted by him" for such purposes, so that there shall be no suit or liens against the company, and "no liability incurred by and no suits brought against said parties of the second part by reason of any expenses incurred" for such purposes. Interest is to be allowed Goldstein for advances made, at twelve per cent per annum. Then it is provided as follows: "Whenever the proceeds resulting or to result from the working of said properties shall be sufficient to discharge all the advances hereafter to be made by the said party of the first part, and the profits from said one-twelfth interest

belonging to said Elizabeth Hastings shall be sufficient to pay and discharge the amount already chargeable against said interest, as shown by the books of the company, with interest on such part thereof as is for advances actually made, in cash, by said party of the first part, or whenever the said Elizabeth Hastings, her heirs or assigns, shall pay to the party of the first part, his heirs or assigns, her just proportion of all sums of money advanced by him and chargeable against her said interest, she shall be entitled to her said one-twelfth interest in all of said properties and in all properties that may be hereafter acquired as a part of the properties of said Brandy City Mining Company (free from all liens in favor of the party of the first part, or any other person or persons, existing by reason of any act of said party of the first part), and shall be entitled to receive one twelfth of all the profits thereafter arising from said properties; but there shall not be, in any event, any personal liability or responsibility on the part of said Elizabeth Hastings, her heirs or legal representatives, for said advances, or any part thereof, or the interest to grow due thereon." There is a similar provision as to Mrs. Hickey. The foregoing are all the provisions of the contract necessary to be at this time mentioned.

Respondent contends that by this contract an equitable lien is created in his favor against appellant's interest in the property, and appellant contends that it does not create any kind of lien, legal or equitable, known to the law. We need not, however, determine whether or not any possible lien as security for the performance of *some* act can be discovered in the language of the contract; for it seems clear that it, at least, does not create a lien for the security of any obligation which respondent has broken. If the contract creates a lien at all, there has been no breach of any condition which would make it enforceable. A lien is well defined in section 1180 of the Code of Civil Procedure, as follows: " A lien is a charge imposed upon specific property by which it is made security for the performance of an act." Now, in the case at bar, appellant did not covenant for the performance of any act whatever, unless it may be said that she impliedly promised to allow Goldstein to manage and control the property, and to apply her share of the products or income of her one-twelfth interest to the satisfaction of his advances; and there is no averment or pretense that she did not comply with such promise; on the contrary,

it affirmatively appears that she did. We need not inquire what rights respondent would have had under his asserted lien if appellant had violated this promise. It is expressly provided in the contract that "there shall not be, in any event, any personal liability or responsibility on the part of said Elizabeth Hastings, her heirs or legal representatives, for said advances, or any part thereof, or the interest to grow due thereon." How, then, can there be a lien for these advances,—for the performance of an act which respondent never promised to perform? It is true, as counsel for respondent says, that there may be a lien for the security of money, without any absolute personal liability beyond the value of the property, as in the case of what is sometimes called a "dry mortgage," and other similar instances. But in all these cases there can be no foreclosure until a breach of condition by the failure of the party to exercise the option to pay the debt or to perform the act in the manner and at the time expressly or impliedly agreed upon. There is, in such cases, an existing liability, which a party must either meet, or allow the property charged to be taken, and thus escape personal responsibility. As was said in a New York case, "it is not essential that the personal remedy against a mortgagor shall be reserved. There is a debt *quoad* the redemption, but not in respect to the personal remedy." (*Brown* v. *Dewey*, 1 Sand. Ch. 72.) A lien cannot be enforced for anything other than the thing for which it was given. In the case at bar, if any lien was created by the contract, it certainly was not for any debt or liability from appellant to respondent for advances; for there never was to be any such debt or liability. The advances were to be satisfied out of a special fund,—that is, the "proceeds" of the work of the mine, and the "profits" from appellant's one-twelfth interest,—and if there was any lien at all, it was only for the enforcement of that mode of satisfaction. There was no guaranty by appellant of the sufficiency of the fund.

Respondent discusses to some extent the general law as to partnership, and the special provisions of the code as to mining partnerships; but we cannot see how the law of partnership has any applicability to the case at bar. There is an averment that down to the date of the contract,— October 17, 1885, — Goldstein, Hastings, and Hickey were mining copartners, although there is no averment that they were mining copartners thereafter, and other averments of the complaint indicate

that they were not such copartners after that date.    This aver-
ment seems to have been of no consequence whatever.    The
action is in no sense a bill to enforce a partnership lien; it is
based entirely on the said written contract and agreement.
The averments are, that "by virtue of and in pursuance of
said agreement," Goldstein advanced certain moneys; that the
moneys in question were expended "as contemplated by and
provided for in said written contract"; that one twelfth of
said advances "is now due and unpaid from said Elizabeth
Hastings, on account of said agreement"; that "under and by
virtue of said written agreement" one twelfth of a certain sum
of money is now due from Mrs. Hastings to plaintiff.    The
action is for the enforcement of a lien alleged to have been
created by the written contract against appellant's undivided
interest in the described property, not for a partnership ac-
counting.

It is not necessary to inquire whether the views above ex-
pressed apply also to the comparatively small amount alleged
to have been due from appellant before the date of execution
of the contract, for that amount is clearly barred by the statute
of limitations, which was pleaded by appellant.

For the foregoing reasons we are of the opinion that the
complaint does not state facts sufficient to constitute a cause
of action, and that the demurrer to the same should have been
sustained.    It is not necessary, therefore, to discuss the many
other points made by appellant.

The judgment appealed from is reversed.

Temple, J., and Henshaw, J., concurred.