## STURM v. ULRICH.

### In re WALLACE.

(Circuit Court of Appeals, Eighth Circuit. December 31, 1925.)

No. 7017.

1. Words and phrases—"Analogy" does not mean identity but implies a difference.

"Analogy" does not mean identity, but implies a difference.

2. Mines and minerals ⬦97—Nature of relationship between common owners and operators of mining property stated.

Relationship between common owners and operators of mining property is somewhat sui generis. Where there is merely common ownership and no joint development, relation is ordinarily tenancy in common; but where they join in development of property, they constitute a "mining partnership."

3. Mines and minerals ⬦97—"Mining partnership" distinguished from ordinary partnership.

A "mining partnership" has many attributes and limitations of ordinary partnership; but death or bankruptcy of partner does not terminate partnership, and one partner may convey his interest, or part thereof, without consent of others, and without terminating partnership, and transferee becomes partner to extent of interest transferred from effective date thereof.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mining Partnership.]

4. Mines and minerals ⬦97—In Oklahoma, mining partnership may exist in development of oil and gas properties.

In Oklahoma, mining partnership may exist in development of oil and gas properties.

5. Mines and minerals ⬦99(2)—Each partner in mining partnership or creditor has lien on partner's interest for advances.

Each partner in mining partnership is liable to others for his share of expenses and losses, and there is lien on his interest in favor of creditors or other partners making advances.

6. Mines and minerals ⬦97—Mining partnership may result from express contract or be implied from conduct.

Mining partnership may result from express contract, or be implied by conduct of parties in joining in mining operation on profit and loss sharing basis or in jointly acquiring mining property for joint development and thereafter prosecuting such development.

7. Mines and minerals ⬦99(3)—Power of one mining partner to bind others limited to acts having direct connection with development of venture.

Power of one partner in mining partnership to bind others is strictly limited to acts having direct connection with development of mining venture.

**8. Corporations ⊕379—Corporation may be member of mining partnership, in absence of statute.**

Corporation may be member of mining partnership or joint adventure of such character, in absence of prohibiting statute, and Oklahoma has no such statute.

**9. Mines and minerals ⊕97—Evidence held to show existence of mining partnership in oil and gas lease.**

Evidence *held* to show existence of mining partnership in oil and gas lease between bankrupt, corporation's transferors, and corporation, entitling corporation and its transferors to lien against bankrupt's interest in partnership for advances.

**10. Mines and minerals ⊕99(2)—Lien for advances attaches to partner's interest in entire partnership property.**

Lien for advances attaches to partner's interest in entire mining partnership property under development, and is not confined to particular part in connection with development of which advances were made.

**11. Bankruptcy ⊕149—Bankruptcy of single partner in mining partnership held not to interfere with partnership business, nor with rights of partners inter se.**

Bankruptcy of single partner in mining partnership does not interfere with ordinary business of partnership, nor rights of partners inter se as to partnership property and bankruptcy court is entitled only to demand profits due bankrupt, and cannot assume administration of business without consent of other partners, except to protect individual rights of bankrupt.

**12. Bankruptcy ⊕293(4)—Court held to have jurisdiction to administer property of solvent mining partnership in which single partner was bankrupt.**

Where bankruptcy trustee of single partner in solvent mining partnership assumed control of partnership property, and other partners, by appearing and asking relief, consented thereto, bankruptcy court could act, and protect rights of all parties, but such assumption of jurisdiction did not change rights of partners inter se, as to partnership property.

**13. Bankruptcy ⊕354—Mortgagee's receiver held entitled to marshaling of liens on mining partner's interest and assets covered thereby.**

Where bankrupt's debtor's interest in oil and gas lease on 20 acres was insufficient to pay mining partnership liens and other liens superior to mortgage, and leave enough to satisfy mortgage, and partners' liens were adequately protected by remaining 40 acres of partnership land, mortgagee's receiver was entitled to marshaling of liens and assets covered thereby, and bankruptcy trustee's contention that such marshaling should not apply to advancements made after the mortgage was executed, or after bankruptcy petition was filed, was untenable.

**14. Mines and minerals ⊕99(2)—That partner in mining partnership incumbered his interest by mortgage held not to affect rights of other partners, nor of mortgagee.**

That partner in mining partnership incumbered his interest by mortgage did not affect rights of other partners to liens for advances, nor right of mortgagee to marshaling of assets which would not harm other partners.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams and Franklin E. Kennamer, Judges.

Action by Bernard Ulrich, receiver for the State National Bank of Ardmore, and another, against Hugh L. Sturm, trustee of the estate of Harold Wallace, bankrupt, and others. Decree for plaintiffs, and the named defendant appeals. Affirmed.

Earl Q. Gray, of Ardmore, Okl. (H. C. Potterf and J. M. Poindexter, both of Ardmore, Okl., on the brief), for appellant.

F. M. Adams, of Ardmore, Okl. (T. B. Orr, of Ardmore, Okl., and Villard Martin, of Tulsa, Okl., on the brief), for appellees Levant Oil Co. and A. M. Ketch.

William Johnson, of Ardmore, Okl. (Hugh W. McGill, of Ardmore, Okl., on the brief), for appellee receiver.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

STONE, Circuit Judge. Harold Wallace, who had been engaged in banking and in oil operations in Oklahoma, became a bankrupt. The State National Bank of Ardmore, to which he was indebted on various notes, became insolvent and was taken over by the Comptroller of the Currency. On March 2, 1922, the bank examiner, with the hope of reviving the bank, procured from Wallace a mortgage securing a portion of this indebtedness. The mortgage covered an undivded one-half in an oil lease on a described 20 acres of land. Less than 4 months later, an involuntary petition in bankruptcy was filed against Wallace, who was later adjudicated a bankrupt and appellant elected as trustee therein.

Some years prior to the above transactions, in 1917, Wallace had acquired an undivided half interest in an oil lease in 80 acres of land from F. L. Ketch. Twenty acres were disposed of and are not involved in this litigation. Of the remaining 60 acres, 20 acres formed the tract covered by the above mortgage. The 40-acre tract was developed through a contract with the Skelly Oil Company. Ketch conveyed one-half of his one-half interest in the lease on the 60 acres to his wife, A. M. Ketch. Thereafter the Ketches and Wallace developed the 20-acre

tract for several years during which time A. M. Ketch advanced therefor a large sum of money which should have been advanced by Wallace. Thereafter, the Ketches transferred their interest in the entire lease to Levant Oil Company which thereafter carried on the development of the 20-acre tract. In such development, the Levant advanced a large sum of money which should have been advanced by Wallace. Mrs. Ketch and the Levant Oil Company each claimed a mining partnership lien superior to the mortgage.

The receiver of the bank brought an action to foreclose the mortgage. That suit was begun before the bankruptcy petition was filed. Thereafter, there was an amended petition bringing in the trustee and a second amended petition bringing in the Ketches and Levant Oil Company. By an amended reply, the bank sought, in event the Ketch and Levant Oil Company advancements were held to be liens superior to the mortgage, to have the two tracts marshaled so that those two sums would be paid from the 40-acre tract. The decree established the mortgage and the Mrs. Ketch and Levant Oil Company advancements as liens and required Ketch and the company to first resort to the 40-acre tract for satisfaction. From this determination only the trustee appeals.

Appellant urges here seven points which may be placed in three general groups: (I) That the mortgage is voidable; (II) that the liens allowed Mrs. Ketch and the Levant Oil Company must fail because no mining partnership between them and Wallace existed; (III) that there was no right to marshal these assets between these three liens.

### I. The Mortgage.

The appellees contend that the question of the validity of the mortgage is not reviewable because a final order affirming its validity was made more than 6 months before this appeal was taken. As our view of the merits as to this matter favors appellees and as we prefer to place our determination upon that ground, we pass by this preliminary proposition without discussing or disposing of it otherwise.

Appellant contends that the mortgage is voidable because made less than 4 months before the petition in bankruptcy was filed, at a time when the bankrupt was insolvent and when the bank examiner knew or had reasonable grounds to believe that such insolvency existed. That the mortgage was executed within the four months period is unquestioned. Also, that the bankrupt was, in reality, insolvent at that time is established. It is hardly contended that the examiner had actual knowledge of such insolvency. The controversy narrows down to whether he was in possession of such information as would have caused a prudent man to doubt and, therefore, to have investigated the solvency of the bankrupt. The master found that the examiner "had reason to believe and did believe" that Wallace was then solvent. The trial court approved the findings of the master. We have painstakingly read and considered all of the evidence upon this matter. While there is a conflict in the evidence and the answer is not entirely free from doubt, yet we not only think the evidence lacks that certainty and clarity which would authorize us to overturn a finding of the master which has been approved by the trial court but we approve that finding as being supported by the weight of the evidence. Therefore, we hold that the mortgage is valid and not voidable.

### II.

Appellant does not deny the general legal proposition that if the relation between the bankrupt and Mrs. Ketch and the Levant Oil Company was that denominated in law as a "mining partnership," a lien for advancements made by one for the benefit of another in connection with the particular mining venture would exist as to the proceeds and mining property. His contentions are (a) that no such "partnership" existed as a matter of fact as to either tract; (b) that it could not legally exist as to the 20-acre tract during the time the Levant Oil Company was operating because a corporation cannot be a member of a partnership; (c) that the Levant Oil Company was never, as a matter of fact, interested, as a mining partner in the 40-acre tract, nor, as matter of law could be a partner therein.

We think the three above propositions can be settled by a statement of the law respecting "mining partnerships," as here applicable, and by a determination of the facts, in that respect, as shown by the evidence.

[1] In working out the legal rights and liabilities arising from novel legal relationships, courts wisely strive to assimilate such to other long established and defined relationships to which the one in question is most similar. But analogy does not mean identity. It implies difference. Also, the attendant use of established terminology only adds to the danger of carrying an analogy too far.

[2-7] The relationship between parties engaged in the common ownership and operation of mining property is somewhat sui generis. Where there is merely a common ownership and no joint development, the relation is, ordinarily, a tenancy in common. Where they join their efforts or means or property in the development of mining property they constitute a "mining partnership." The use of the term "partnership" in this connection is by analogy and is not to be taken as meaning, in all legal respects, the same as an ordinary business or trading partnership. Such a partnership has many of the attributes and limitations of an ordinary partnership but not all such. There are some cardinal differences. Probably, the main differences are that the death or bankruptcy of one such partner does not terminate the partnership and that one partner may convey his interest, or any part thereof, without the consent of his associates and without terminating the partnership and the transferee thereof becomes a partner, to the extent of the interest transferred, from the effective date thereof. Mining partnerships are held, generally, to be applicable to development of oil and gas properties—Pennsylvania being the exception. Such relationship in this regard is recognized in Oklahoma. Where a mining partnership exists, each partner is liable to the others for his share (depending upon his interest) of the expenses and losses incurred in the enterprise and there is a lien for such upon his interest in the property or proceeds therefrom in favor of creditors or of other partners who have made advances. Such a partnership may result from express contract or be implied by the conduct of the parties in joining in mining operation on a profit and loss sharing basis or in jointly acquiring mining property for the purpose of joint development and afterwards prosecuting such development or where persons owning a mine engage in working it for the purpose of extracting the minerals. Where a mining partnership is in existence, the purchase of an interest of a partner or the purchase of an interest of a partner in the lease being mined makes the purchaser a partner. The power of one such partner to bind the others is strictly limited to acts having a direct connection with the development of the mining venture which is the subject of the partnership. In the footnote are collected numerous cases supporting the above rules and, also, distinguishing mining partnerships from tenancies in common, agency agreements and hiring contracts.[1]

---

[1] Kimberly v. Arms, 129 U. S. 512, 9 S. Ct. 355, 32 L. Ed. 764; Bissell v. Foss, 114 U. S. 252, 5 S. Ct. 851, 29 L. Ed, 126; Kahn v. Central Smelting Co., 102 U. S. 641, 26 L. Ed. 266; Taylor v. Salt Creek Consol. Oil Co., 285 F. 532 (C. C. A. 8th Cir.); Lesamis v. Greenberg, 225 F. 449, 140 C. C. A. 481 (9th Cir.); Greenberg v. Lesamis, 203 F. 678, 122 C. C. A. 74 (9th Cir.); Shea v. Nilima, 133 F. 209, 66 C. C. A. 263 (9th Cir.); G. V. B. Min. Co. v. First Nat. Bank, 95 F. 35, 35 C. C. A. 510 (9th Cir.); Thomas v. Hurst, 73 F. 372 (C. C. D. Mo.); Santa Clara Min. Ass'n v. Quicksilver Min. Co., 17 F. 657, 659 (C. C. D. Cal.); Johnstone v. Robinson, 16 F. 903, 905 (C. C. D. Colo.); First Nat. Bank v. Bissell, 4 F. 694 (C. C. D. Colo.); In re Gladough, 1 Alaska, 649; McMahon v. Meehan, 2 Alaska, 278; Marks v. Gates, 2 Alaska, 519; Elliott v. Elliott, 3 Alaska, 352; McNamee v. Williams, 3 Alaska, 470; Bell v. Wright, 25 Ariz. 97, 213 P. 575; Stone v. Riggs, 163 Ark. 211, 259 S. W. 412; Waring v. Crow, 11 Cal. 366; Gore v. McBrayer, 18 Cal. 582; Skillman v. Lachman, 23 Cal. 198, 83 Am. Dec. 96; Henderson v. Allen, 23 Cal. 519; Duryea v. Burt, 28 Cal. 569 (a leading case); Dougherty v. Creary, 30 Cal. 290, 89 Am. Dec. 116; Settembre v. Putnam, 30 Cal. 490; Patterson v. Keystone Min. Co., 30 Cal. 360; Jones v. Clark, 42 Cal. 180; Taylor v. Castle, 42 Cal. 367; Decker v. Howell, 42 Cal. 636; Nisbet v. Nash, 52 Cal. 540; Morganstern v. Thrift, 66 Cal. 577, 6 P. 689; Stuart v. Adams, 89 Cal. 367, 26 P. 970; Chung Kee v. Davidson, 102 Cal. 188, 36 P. 519; Berry v. Woodburn, 107 Cal. 504, 40 P. 802; Dellapiazza v. Foley, 112 Cal. 380, 44 P. 727; Dorsey v. Newcomer, 121 Cal. 213, 53 P. 557; Ferris v. Baker, 127 Cal. 520, 59 P. 937; Prince v. Lamb, 128 Cal. 120, 60 P. 689; Frowenfeld v. Hastings, 134 Cal. 128, 66 P. 178; Harper v. Sloan, 177 Cal. 174, 169 P. 1043, 181 P. 775; Lawrence v. Robinson, 4 Colo. 567; Charles v. Eshleman, 5 Colo. 107; Manville v. Parks, 7 Colo. 128, 2 P. 212; Higgins v. Armstrong, 9 Colo. 38, 10 P. 232; Jennings v. Rickard, 10 Colo. 395, 15 P. 677; Meagher v. Reed, 14 Colo. 335, 24 P. 681, 9 L. R. A. 455; Slater v. Haas, 15 Colo. 574, 25 P. 1089, 22 Am. St. Rep. 440; Hurd v. Tomkins, 17 Colo. 394, 30 P. 247; Butler v. Hinckley, 17 Colo. 523, 30 P. 250; Patrick v. Weston, 22 Colo. 45, 43 P. 446; C. D. M. I. Co. v. Bliley, 23 Colo. 160, 46 P. 633; Hodgson v. Fowler, 24 Colo. 278, 50 P. 1034; Taylor v. Thomas, 31 Colo. 15, 71 P. 381; Milliken v. Fredrickson, 73 Colo. 534, 216 P. 714; McLaughlin v. Thompson, 2 Colo. App. 135, 29 P. 816; Perkins v. Peterson, 2 Colo. App. 242, 29 P. 1135; Ashenfelter v. Williams, 7 Colo. App. 332, 43 P. 664; Caley v. Coggswell, 12 Colo. App. 394, 55 P. 939; Lyman v. Schwartz, 13 Colo. App. 318, 57 P. 735; Lamont v. Reynolds, 26 Colo. App. 347, 144 P. 1131; Hawkins v. S. H. Min. Co., 3 Idaho (Hasb.) 241, 28 P. 433; Haskins v. Curran, 4 Idaho, 573, 43 P. 559; Brown v. Bryan, 5 Idaho, 145, 51 P. 995; Hand v. Allen, 294 Ill. 35, 128 N. E. 305; Huston v. Cox, 103 Kan. 73, 172 P. 992; Judge v. Braswell, 13

[8] There is nothing in the nature of a corporate organization, as such, which would prevent it from being a member of a mining partnership or in a joint adventure of that character. Its power in that respect would depend upon its character or organic law. 14a C. J. 291. There is no statute in Oklahoma containing such a prohibition and it seems conceded that the Levant Oil Company was, by its charter, empowered to develop oil and gas lands. While this particular matter is not determined directly in any case of mining partnership brought to our attention, yet there are cases of mining partnerships wherein corporations were partners. Kahn v. Smelting Co., 102 U. S. 641, 26 L. Ed. 266; C. D. M. I. Co. v. Bliley, 23 Colo. 160, 46 P. 633; Hawkins v. Spokane Hydr. Min. Co., 3 Idaho (Hasb.) 241, 28 P. 433; Lind v. Webber, 36 Nev. 623, 134 P. 461, 141 P. 458, 50 L. R. A. (N. S.) 1046, Ann. Cas. 1916A, 1202; Kennedy v. Beets Oil Co., 105 Okl. 1, 231 P. 508; and see Anaconda Copper Min. Co. v. B. & B. Min. Co., 17 Mont. 519, 43 P. 924, and Horton v. New Pass G. & S. Min. Co., 21 Nev. 184, 27 P. 376, 1018, which were cases where corporations were sought to be held as partners but the court found, on the facts, that no such relation existed. When it is considered that the transference of an interest of one mining partner does not terminate the partnership and that such doctrine is founded on the necessity of the case to prevent interference with mining development once begun, we think it would be an unfortunate restraint, both upon the liberty of the partner to dispose of his interest and upon the development of mines, if corporations (having mining powers) could not acquire such interests and join in such character of development.

[9] The evidence shows beyond dispute the following facts concerning the lease and operation of these tracts of 40 and of 20 acres. J. H. Dillard and wife gave F. L. Ketch an oil and gas lease on 190 acres, in 1916. The rights, under this lease, in all except 80 acres, were disposed of by Ketch. The Dillard lease was a development lease requiring mining for oil and gas. In 1917, Ketch assigned an undivided half interest in the 80 acres to Wallace. Thereafter, 20 acres out of the 80 acres were disposed of, leaving the 60 acres involved in this action. Thereafter, an undivided interest in 40 acres was assigned to Geo. S. Bole who transferred his assignment to the Skelly Oil Company. This assignment provided for the active development of the property and a sharing of expenses and profits. The Skelly Oil Company proceeded to develop the 40-acre tract, while Ketch and Wallace did the same on the

Bush. (Ky.) 67, 26 Am. Rep. 185; Hamman v. Emerson, 135 La. 629, 65 So. 765; Phillips v. Jones, 20 Mo. 67; Snyder v. Burnham, 77 Mo. 52; Mackie-Clemens Fuel Co. v. Brady, 202 Mo. App. 551, 208 S. W. 151; Freeman v. Hemenway, 75 Mo. App. 611; Dale v. Goldenrod Min. Co., 110 Mo. App. 317, 85 S. W. 929; Nolan v. Lovelock, 1 Mont. 224; Boucher v. Mulverhill, 1 Mont. 306; Southmayd v. Southmayd, 4 Mont. 100, 5 P. 318; Galigher v. Lockhart, 11 Mont. 109, 27 P. 446; Harris v. Lloyd, 11 Mont. 390, 28 P. 736, 28 Am. St. Rep. 475; Anaconda Copper Min. Co. v. Butte & Boston Min. Co., 17 Mont. 519, 43 P. 924; Congdon v. Olds, 18 Mont. 487, 46 P. 261; Horton v. N. P. Gold & Silver Min. Co., 21 Nev. 184, 27 P. 376 and 1018; McKenzie v. Coslett, 28 Nev. 65, 78 P. 976; Lind v. Webber, 36 Nev. 623, 134 P. 461, 135 P. 139, 141 P. 458, 50 L. R. A. (N. S.) 1046, Ann. Cas. 1916A, 1202; Dailey v. Fitzgerald, 17 N. M. 137, 125 P. 625, Ann. Cas. 1914D, 1187; Ervin v. Masterman, 8 Ohio Cir. Dec. 516; Gillespie v. Shufflin, 91 Okl. 72, 216 P. 132; Wells v. Shriver, 81 Okl. 108, 197 P. 460, 483; Barrett v. Buchanan, 95 Okl. 262, 213 P. 734; Kennedy v. Beets Oil Co., 105 Okl. 1, 231 P. 508; Watterson v. Reynolds, 95 Pa. 474, 40 Am. Rep. 672; Fulmer's Appeal, 128 Pa. 24, 18 A. 493, 15 Am. St. Rep. 662; Huchinson v. Snider, 137 Pa. 1, 20 A. 510; Dunham v. Loverock, 158 Pa. 197, 27 A. 990, 38 Am. St. Rep. 838; Neill v. Shamburg, 158 Pa. 263, 27 A. 992; B. S. Bank v. Osborne, 159 Pa. 10, 28 A. 163, 39 Am. St. Rep. 665; Taylor v. Fried, 161 Pa. 53, 28 A. 993; Laughner v. Wally, 269 Pa. 5, 112 A. 105; Southern O. & G. Co. v. Mexia, O. & G. Co. (Tex. Civ. App.) 186 S. W. 446; Roberts v. McKinney (Tex. Civ. App.) 187 S. W. 976; Davis v. Hudgins, (Tex. Civ. App.) 225 S. W. 73; Humble O. & R. Co. v. Strauss (Tex. Civ. App.) 243 S. W. 528; Sims v. Humble O. & R. Co. (Tex. Civ. App.) 252 S. W. 1083; Connellee v. Nees (Tex. Civ. App.) 254 S. W. 625; Indiahoma Refin. Co. v. Wood (Tex. Civ. App.) 255 S. W. 212; Mayfield v. Key (Tex. Civ. App.) 260 S. W. 926; Adams v. Texhoma O. & R. Co. (Tex. Civ. App.) 262 S. W. 139; Graham v. Pierce, 19 Grat. (Va.) 28, 100 Am. Dec. 658; Lamar v. Hale, 79 Va. 147; Williamson v. Jones, 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891; Childers v. Neely, 47 W. Va. 70, 34 S. E. 828, 49 L. R. A. 468, 81 Am. St. Rep. 777; Blackmarr v. Williamson, 57 W. Va. 249, 50 S. E. 254, 4 Ann. Cas. 265; Kirchner v. Smith, 61 W. Va. 434, 58 S. E. 614, 11 Ann. Cas. 870; Wetzel v. Jones, 75 W. Va. 271, 84 S. E. 951; Hartney v. Gosling, 10 Wyo. 346, 68 P. 1118, 98 Am. St. Rep. 1005; Crawshay v. Maule, 1 Swanst. 518; Fereday v. Wigthwick, 1 Russ. & Myl. 45; Jefferys v. Smith, 17 Eng. Rul. Cas. 835; Martin v. Porter, 17 Eng. Rul. Cas. 841; Norway v. Rowe, 19 Eng. Rul. Cas. 557; Rule v. Jewell, 19 Eng. Rul. Cas. 561.

Also, see valuable discussion and notes in 27 Cyc. 755; 18 R. C. L. 1200; 28 Am. St. Rep. 488; 83 Am. Dec. 104; 4 Ann. Cas. 267; 16 Ann. Cas. 304; Ann. Cas. 1914D, 1191; Ann. Cas. 1916A, 1210.

remaining 20-acre tract. Later, A. M. Ketch, wife of F. L. Ketch, acquired a part of and, thereafter, all of the interest of F. L. Ketch in these 60 acres. While she held these interests, she made advances for Wallace in connection with development of the lease. Thereafter, she sold her entire interest to the Levant Oil Company which afterwards made advances for Wallace in connection with the further development of the lease. It is these successive advances by Mrs. Ketch and by the Levant Oil Company which are involved here.

[10] The above facts show a community of interest and action in the development of the entire 60 acres by Wallace with, successively, F. L. Ketch, then F. L. Ketch and Mrs. Ketch, then Mrs. Ketch and finally the Levant Oil Company. They were to share expenditures and profits, in proportion to their respective interests, from such mining operations. This gave rise, under the above rules of law, to a mining partnership which, although its membership changed, never ceased to exist. Such relationship gave each of the partners a right of lien upon the partnership interests of the others for any advancements made on account of the common venture. We think that this lien attached to such partnership interests in the entire 60 acres—the entire partnership property—and the circumstance that an advancement was made in connection with the development of a particular part of the entire tract, when all was being developed, would not confine the lien to such part. When Mrs. Ketch and, later, the Levant Oil Company came into the venture there was an existing mining partnership and it was an interest therein which she purchased and passed on to the company. As said in Kennedy v. Beets Oil Co., 105 Okl. 1, 4, 231 Pac. 508, 511: "When a mining partnership is once created, it continues and is not dissolved by the fact that one of the partners has disposed of his interest to some outside party. What the defendants bought into when they acquired their interests in the lease in question was an undivided interest in a mining partnership and thereby secured the rights and assumed the obligations which the well-established rules governing such partnerships provide."

Therefore, we conclude that Mrs. Ketch and the Levant Oil Company had a lien, for the advances made by each respectively, against the entire interest of Wallace in the 60 acres.

[11, 12] A portion of the advances made by the Levant Oil Company was in connection with operations after the filing of the bankruptcy petition against Wallace. Bankruptcy of a partner does not dissolve a mining partnership. Bissell v. Foss, 114 U. S. 252, 260, 5 S. Ct. 851, 29 L. Ed. 126; Kahn v. Smelting Co., 102 U. S. 641, 646, 26 L. Ed. 266, and numerous other cases cited in the foregoing footnote. There is no reason why such bankruptcy should interfere with the ordinary orderly prosecution of the business of such partnership nor with the rights of the partners inter sese as to the partnership property. The bankruptcy court could demand any profits due the bankrupt because such would be his individual property and it could dispose of the interest of the bankrupt; but it could not assume administration of the partnership business nor interfere therewith except to protect the individual rights of the bankrupt therein. Even in an ordinary business or trading partnership, a bankruptcy court cannot, without consent of the solvent partners, administer on partnership assets or interfere with the partnership affairs where the partnership is not in bankruptcy but only a single partner. Collier on Bankruptcy (13th Ed.) 233–236, and copious notes thereto. The trustee had no legal right, in the beginning, to take control of this purely partnership property. His right was to protect and secure (for the creditors of the bankrupt) the individual property or proceeds due the bankrupt from the partnership. But since he has assumed such control and the other partners, by appearing and asking relief herein, have consented to such jurisdiction and since such jurisdiction can be exercised in a manner which will protect the rights of all parties and secure for the bankrupt estate any value, in the partnership property, belonging to the bankrupt, we see no reason why the court should not act. However, such assumption cannot operate to change the rights of the partners between themselves as to partnership property. Therefore, either as an advancement to a partner or as a payment made for the benefit of and to preserve the estate by one having a legal right to make such payment, the Levant Oil Company is entitled to payment for such advances made after bankruptcy and to its lien for such.

### III.

[13] Concerning the marshaling of assets the appellant contends (a) that the burden of proof is on the receiver of the bank; (b) that the partners should be confined to the

20-acre tract; (c) that such marshaling should not apply to advancements after the mortgage was executed or (d) after the petition in bankruptcy was filed. We think the receiver has sustained this burden. He has shown that the 20-acre tract cannot pay these partnership advances and other liens superior to his and leave enough to satisfy his lien; that his lien is confined to that tract; that the partners are not so confined but have an adequate protection and a like resort to the proceeds from the 40-acre tract (as discussed above under division II of this opinion). Therefore, he has sustained his right to a marshaling of these liens and the assets covered by them.

[14] As a member of a mining partnership may freely convey his interest without disturbing such partnership, the lesser step of incumbering such interest by a mortgage did not affect the rights of the other partners to their lien nor the right of the mortgagee to a marshaling of assets which would result in no harm to such partners. Besides, they are not here complaining of the action of the court but are attempting to uphold it. It is difficult to see why the general creditors should be accorded an advantage over the lien creditors by preventing a marshaling of assets and liens on the ground that a lien (by mortgage) was given. What has been said above (division II of this opinion) answers the contention respecting marshaling of advances after filing the petition in bankruptcy.

The decree must be and is affirmed.