[No. 2414]

# A. BAUMANN AND MARTHA BAUMANN (HUSBAND AND WIFE), RESPONDENTS, *v.* NEVADA COLONY CORPORATION (A CORPORATION), APPELLANT.

[189 Pac. 245]

1. JUDGMENT—COURT HAS WIDE DISCRETION TO OPEN DEFAULTS.
   There is no general rule for determining when a default should be opened, but every case must depend upon its own facts, and the lower court is necessarily vested with a wide discretion in passing upon those facts.

2. JUDGMENT—DISCRETION TO OPEN DEFAULTS SHOULD BE LIBERALLY EXERCISED.
   The discretion of the courts to set aside defaults should be liberally exercised to the end that case may be determined on its merits.

3. JUDGMENT — NEGLIGENCE OF CORPORATE OFFICERS PERMITTING DEFAULT HELD EXCUSABLE.
   Where the attorneys for corporation sent an answer to its secretary to verify and file, but before its arrival the secretary had resigned and he merely delivered the answer to assistant secretary with other unimportant papers, and the new secretary and the president did not discover it in time, though they were negligent, their negligence was excusable, and the trial court should have set the default aside.

4. JUDGMENT—OPENING DEFAULT CANNOT BE REFUSED FOR NEGLIGENCE OF FORMER CORPORATION OFFICER.
   Where the secretary of a corporation had resigned before receiving an answer to be verified and filed, his conduct in merely handing the answer with other papers to his assistant without any statement as to necessity for attending to it was inexcusable negligence; but, since he was no longer a corporate officer, such negligence could not be attributed to the corporation.

5. JUDGMENT—DEFAULT HELD NOT DUE TO "FORGETFULNESS."
   Where a corporation defaulted because its officers did not discover an answer received by a former secretary after his resignation delivered with other unimportant papers, the default could not be attributed to "forgetfulness," which implies previous knowledge.

APPEAL from the Eighth Judicial District Court, Churchill County; *T. C. Hart,* Judge.

Action by A. Baumann and wife against the Nevada Colony Corporation. From an order denying defendant's motion to vacate the default and judgment entered against it, defendant appeals. **Reversed, with**

directions to set aside the default and judgment to permit defendant to answer upon terms.

*Ayres & Gardiner,* for Appellant:

The default and judgment were permitted to be entered because of the excusable neglect and inadvertence of the appellant, and it was error of law and an abuse of the discretion of the court under the circumstances to refuse to open such default. "Where there is any doubt as to whether or not the relief should be granted, that doubt should be resolved in favor of the relief." Banta v. Siller, 121 Cal. 414; Vinson v. Railroad, 147 Cal. 479; Watson v. Railroad, 41 Cal. 20; Sherman v. S. P. Co., 31 Nev. 285; Melde v. Reynolds, 129 Cal. 308; Horton v. New Pass Co., 31 Nev. 184.

"Ordinarily an appellate court will not disturb an order setting aside a default regularly entered where the application is made upon the ground of inadvertence or excusable neglect, supported by an affidavit or showing of merits. While the granting or denying of such a motion is within the discretion of the trial court, it is a legal discretion, to be exercised liberally in the interest of justice." Esden v. May, 36 Nev. 611.

*M. J. Scanlan* and *James Glynn,* for Respondents:

The default judgment was entered according to law and the rules of the court. The refusal to set aside the judgment and open the default was within the exercise of the sound discretion of the court and should be affirmed.

"In applications to set aside judgments by default or entered in ex parte proceedings, affidavits in support of such applications are to be construed most strongly against the party making the application." Hallin v. Penney, 209 Ill. 230.

Application to vacate a default judgment is addressed to the sound discretion of the trial court. "The appellate court will not interfere with the action of the trial court

in passing upon such motion." Lynch v. Arizona E. M. Co., 179 Pac. 956; Penryn L. Co. v. Kahori, 173 Pac. 612; Esden v. May, 36 Nev. 611.

Forgetfulness is not sufficient ground for vacating or setting aside a judgment by default. Lovell v. Willis, 129 Pac. 1052.

"Inexcusable neglect of an agent of a party will be imputed to such party, and failure of both defendant and agent to inquire concerning the disposition of the case constitutes inexcusable negligence." Stallings v. Spruill, 86 S. E. 890; Lynch v. Arizona E. M. Co., supra.

Unless the discretion of the trial court is abused, its action will be sustained on appeal. Lynn v. Knob Hill Improvement Co., 169 Pac. 1009; Picher v. Hornaday, 202 S. W. 410.

By the Court, DUCKER, J.:

On the 18th day of May, 1918, plaintiffs commenced an action in the district court in Churchill County against the Nevada Colony Corporation, a corporation. The complaint was twice amended, and on the 3d day of April, 1919, the court made and entered an order overruling a demurrer in the second amended complaint and gave the corporation fifteen days in which to answer.

On the 18th day of April, a stipulation signed by the attorneys for the respective parties was filed extending the time to answer to April 25, 1919.

On the 6th day of June, 1919, no answer having been filed in the action, a default was taken, and, upon the evidence produced by plaintiffs in support of their cause of action, the court duly entered its judgment.

A motion to vacate and set aside the default and judgment filed on the 28th day of June, 1919, was denied by order of the court. Hence this appeal.

The ground of the motion was that said default and judgment resulted through the mistake, surprise, and inadvertence of the defendant. A verified answer was

presented with the motion, which defendant proposed to file, by leave of the court. The motion was supported by affidavits of former and present officers of the corporation and by an affidavit of a former attorney for defendant. The affidavit of the attorney, A. Grant Miller, sets forth that during the times mentioned therein he was one of the attorneys of record in the case for the corporation; that he mailed to E. Opdyke, the former secretary of said corporation, an answer in said case, accompanied by a letter in which he asked the said Opdyke to swear to said answer and to file it; that affiant had always corresponded with said Opdyke on the legal affairs of the corporation, and when he mailed said answer believed he was still, and would continue to be, the secretary and the proper person to whom said answer should be sent; that affiant never received any word from said Opdyke or from any other person that said answer had not been filed; that he took it for granted that it had been properly filed, and a few days later, and within the time for answering, according to the best recollection of affiant, he personally delivered to James Glynn, associated with M. J. Scanlan, a copy of said answer, thereby serving the answer upon the plaintiffs; that the time within which to answer expired upon April 25, 1919; that affiant did not know until the 2d day of June, 1919, that any default had been taken, and always supposed that the case was at issue.

E. Opdyke in his affidavit deposes and says:

"That between the 1st day of January, 1919, and the 10th day of April, 1919, he was the duly qualified and acting secretary of the Nevada Colony Corporation, a corporation, and on the said 19th day of April, 1919, he resigned his office as secretary of said corporation, and ever since said 19th day of April, 1919, he was not secretary, or other officer of said corporation; that on Monday, the 21st day of April, 1919, affiant received through the United States mail, at Nevada City, via Fallon, Nevada (East Star Route), about 5 o'clock p. m. of

said day, from Miller & Mashburn, attorneys of record for said Nevada Colony Corporation, an amended answer in the case of A. Baumann and Martha Baumann, husband and wife, plaintiffs, v. Nevada Colony Corporation, a corporation, defendant, Case No. 824; that at the time of receiving said amended answer affiant was not the secretary or other officer of said defendant corporation; that on said Monday, the 21st day of April, 1919, affiant left said amended answer in the office of the secretary of said corporation, but no one was in the office at the time to receive said papers; that therefore, on Tuesday, the 22d day of April, 1919, affiant delivered to C. E. Maxwell, the then acting secretary of said corporation, defendant, said amended answer, together with many other papers belonging to said corporation, in the office of said secretary of said corporation; that said amended answer was together with many notes and papers in different cases and no special reference was made to said amended answer at the time of the delivery, or thereafter; affiant further says that he does not remember of the matter of said amended answer being mentioned to C. E. Maxwell, secretary."

The affidavit of C. E. Maxwell sets forth:

"That in the month of March, 1919, he was duly elected and qualified assistant secretary of the Nevada Colony Corporation; that on the 19th day of April, 1919, E. Opdyke, secretary, resigned the office of secretary of said corporation, and said resignation was duly accepted on said 19th day of April, 1919; and thereafter, from April 20, 1919, to April 30, 1919, he acted as secretary of said corporation.

"That on the 22d day of April, 1919, E. Opdyke, the former secretary of said corporation, delivered to him a large number of papers belonging to said corporation, among which were notes, mortgages and court papers, and correspondence from attorneys; the exact character of each paper was at the time, and ever since has been, unknown to affiant; that he was in possession of said

papers, as acting secretary, up to April 30, 1919, when on that date he turned over all of said papers and documents to John M. Sovil, the then elected and qualified secretary.

"That no mention was made to him at the time of delivery by said Opdyke of there being any papers or documents requiring immediate attention, and he put all of said papers away and gave them no further attention; that said E. Opdyke stated to him that he would assist him in any matter requiring immediate attention, and he depended on said Opdyke to direct him in any matter requiring attention, and he was not familiar with the duties of the secretary nor with the documents and papers of said corporation requiring attention; that said Opdyke, nor any other person, never called his attention to the matter of the amended answer in the case of A. Baumann and Martha Baumann, husband and wife, v. Nevada Colony Corporation."

John M. Sovil in his affidavit avers:

"That he is and ever since the 30th day of April, 1919, has been the secretary of the Nevada Colony Corporation; that prior to said date he had no official connection with the affairs of said corporation, was a mere stockholder and knew of its business only in a general way; that he never knew any answer by the defendant was required in the suit described in the annexed notice of motion, or that the defendant was in default, nor had he seen the proposed answer sent by A. Grant Miller to E. Opdyke until after the default of defendant had been entered when he assisted the president, H. C. Power, to look over the papers of the corporation in an endeavor to learn how the default had occurred, whereupon they found said answer in a lot of old papers of no value in the office of the secretary."

H. C. Power in his affidavit deposes and says:

"That he is and ever since the 30th day of April, 1919, has been a director and the president of the Nevada Colony Corporation, the defendant in a certain action

pending in the Eighth Judicial District Court of the State of Nevada, in and for the County of Churchill, wherein A. Baumann and Martha Baumann are plaintiffs.

"That affiant had not been a director nor any officer of said corporation for approximately a year prior to the date last mentioned.

"That upon taking office affiant knew that said suit was pending and had been pending for many months; that various hearings had taken place in connection with the pleadings in said action and that said action was pending and undetermined; that he knew A. Grant Miller was attorney for the corporation in that case; believed, and had no reason to believe otherwise, that said case was being properly handled and the rights of the corporation fully protected; that in making this statement, affiant makes no reflection upon Mr. Miller, as the default in said case was owing to no negligence upon his part.

"That immediately upon taking office affiant became busy in the arbitration of four other litigated matters which demanded all of his time; that affiant did not know of anything in the suit mentioned to demand his attention.

"That upon assuming the office of president affiant also became the general manager of the affairs and, had he known of anything that demanded attention in said suit, he would immediately have attended to it.

"That affiant is informed and believes and upon such information and belief alleges that when the said Miller sent to E. Opdyke, as alleged in said Opdyke's affidavit, the answer of defendant he did not know that said Opdyke had ceased to be secretary; that it is probably true that said Opdyke was secretary at the time said answer was mailed to him, but he had ceased to be secretary prior to the time said answer was received by him; that prior thereto the said Opdyke had been the manager as well as the secretary of said corporation

and, had he still held office, would have been the proper
person to receive and act upon said answer.

"That it was not until after the default of defendant
had been taken that affiant learned that the time of the
defendant to answer had expired without an answer
being filed or had any knowledge or notice of the neces-
sity for any action by the corporation in said case.
That the time in which to answer did not expire until
April 25, and that default was not taken until June
6, 1919.

"That affiant is informed and believes, and upon such
information and belief alleges, that said Miller, taking
it for granted that Opdyke had verified and filed such
answer which said Miller had instructed him to do,
served upon M. J. Scanlan, the attorney for the plain-
tiffs, or upon James Glynn, his associate, a copy of
said answer, and that said Scanlan believed the case
properly at issue. That affiant received from said Scan-
lan a copy of a letter written by said Scanlan to Judge
Hart, stating that the case was at issue and asking when
said case could be tried. That affiant has mislaid or
destroyed said copy and cannot find it. That said letter
was received before said default was taken and further
led affiant to believe that an answer had been filed by
said corporation and that the case was properly at issue.
That, had affiant known at that time that said case was
not at issue, he would have had ample time in which to
cause an answer to be filed and would at once have
done so.

"That, immediately upon learning that said default
had been taken, affiant began an investigation to ascer-
tain the reason therefor, and then found the answer,
sent by said Miller for verification and filing. That the
same was among a lot of old papers of no importance
whatever, in the office of the company.

"That it was the custom of the corporation to put into
its safe all papers of importance, and that immediately
upon taking office affiant went through all the papers

in the safe of the corporation to see what matters demanded immediate attention. That said answer was not in said safe, and that nothing was there to indicate that any action was necessary in said case.

"That affiant has fully and fairly stated the facts of said case to Ayres & Gardiner, who are attorneys for said corporation in this case, and has been informed by them that said corporation has a good defense to said action upon the merits.

"That herewith affiant submits the answer of said corporation to the second amended complaint of plaintiff and asks that said default be vacated and said answer ordered filed.

"That said plaintiffs have had execution issued in said action, have levied upon certain property of said corporation, and that the sheriff has noticed the sale for the 23d of this month. That, in the event that this default is not vacated before that time and the execution recalled, affiant asks that the court order said sale postponed until after a determination of the motion to vacate said default."

There were no counter affidavits or testimony presented by plaintiffs.

1, 2. On the showing made by these affidavits, we are of the opinion that the default and judgment should be set aside and the defendant allowed to answer. There is no claim by plaintiff that the defendant does not present a meritorious defense. It is contended only that the company negligently permitted the default to be taken by failing to file an answer within the period of time shown by the record and affidavits, and that such neglect is inexcusable. As repeatedly stated by this court, it is difficult to lay down any general rule for determining when a default should be opened. Each case must depend upon its own facts, and the lower court is necessarily vested with a wide discretion in passing upon these facts. This court has, however, as will be seen by a reference to the cases, adopted a liberal

rule in the matter of opening defaults.   In Horton ·v. New Pass Co., 21 Nev. 184, 27 Pac. 376, 1018, the court, on a showing far less meritorious than the one made here, reversed the judgment with directions to the district court to open the default upon terms.   The court in passing upon the question, after alluding to the difficulty in formulating any general rule, said:

"It is safe, however, to say that courts should be liberal in such matters, where a meritorious defense is shown to the whole or a substantial part of an action, and it is apparent that the failure to answer is the result of a mistake or of negligence which.is not so gross as to be inexcusable, or to indicate trifling with the court, to the end that cases may be determined upon their merits and not upon such inadvertence or slip or aberration of the opposing party or counsel.   Such terms can always be imposed as will compensate the plaintiff for any loss occasioned him by the delay and as will make it unprofitable to a defendant to wilfully neglect to answer."

In Stretch v. Montezuma M. Co., 29 Nev. 163, 86 Pac. 445, the court also inclined toward a liberal view in setting aside the default of the defendant.   It was said:

"Every case depends largely upon its own facts, but courts are liberal in relieving defendants from defaults when they offer a good defense and have not been guilty of inexcusable delay.   This is especially true under statutes which, like section 68 of our practice act (Comp. Laws, 3163), provide that the court may allow an answer to be filed after the time limited, and may, upon such terms as may be just, relieve a party from a judgment, order, or other proceeding taken against him by mistake, inadvertence, surprise, or excusable neglect, and as heretofore held by this court stronger reasons exist for reversing an order refusing to set aside, than one for opening, a default."

See, also, Esden v. May, 36 Nev. 611, 135 Pac. 1185, wherein Chief Justice Talbot expressed the views of

this court as to the duty of district courts in reference
to defaults. The court said:

"While the granting or denying of such motion is
within the discretion of the trial court, it is a legal dis-
cretion, to be exercised liberally in the interest of jus-
tice." Esden v. May, 36 Nev. 619, 135 Pac. 1188, supra.

3. With the liberal tendency of these decisions in
mind, we think the lower court, in refusing to set the
default and judgment aside, inclined to a rather strict
exercise of its discretion. The corporation's former and
present officers, making the affidavits used in support
of the motion, were guilty of negligence, and the negli-
gence of the persons, who were then officers of the
corporation, is imputable to it. But, under the peculiar
circumstances attending the transmission of the pro-
posed answer to their custody, their negligence, in not
causing it to be verified and filed before the default was
taken, is excusable.

4. If Opdyke had been the corporation's secretary
when he received the proposed answer from the attorney
with directions to verify and file it, his failure to do so
under the circumstances shown would have constituted
inexcusable negligence for which the corporation would
have been responsible. But he was not an officer of the
corporation when he received the answer and instruc-
tions and therefore the corporation was not chargeable
with any act of omission on his part. It appears that
he did not inform the acting secretary, Maxwell, to
whom he delivered the answer and the other papers
belonging to the corporation, of the importance of the
pleading and of the necessity of its being verified and
filed in the action expeditiously.

Maxwell's attention was not directed to the matter by
any one. He received the answer and other papers on
the 22d day of April, and on the 30th of April delivered
them to Mr. Sovil who became the secretary of the cor-
poration on the last-named date. Prior to that time he
had been a mere stockholder and knew of the affairs of

the corporation only in a general way.  He did not know that an answer was required and did not see the proposed answer until after the default was entered.

It appears from the affidavit of the president of the corporation that he assumed his office on the 30th day of April and that he had not been an officer of the corporation for approximately a year prior to that date. He knew the action was pending and that various hearings had been held in connection with the pleadings. He knew also that Mr. Miller was attorney for the corporation, but had not been informed that anything was necessary to be .done by any of the officers of the corporation in regard to verifying and filing an answer. The matter was not called to his attention until after the default had been entered and judgment rendered. It appears also that the attorneys for the plaintiff believed that an answer had been filed, from the service of a copy upon one of them by Mr. Miller, the attorney for the corporation, and that the president had seen a letter from one of them addressed to the district judge stating that the case was at issue and asking when it could be tried, which led him to believe that an answer had been filed and that the case was at issue.

It is true that the letter written by the attorney to Mr. Opdyke, the former secretary, containing instructions concerning the answer and the answer itself were in the possession of the officers of the corporation for thirty-six days before default was taken.  It is also true that it was the duty of the officers of the corporation to diligently inform themselves as to the affairs of the corporation and that this duty was in a measure neglected in regard to the answer.  But the statute is designed to relieve a party from the effects of negligence when it is not so gross as to be inexcusable.  There is nothing in the showing made to indicate that the failure to verify and file the answer was on account of the wilfulness of any of the present officers of the corporation.

That the corporation desires in good faith to defend the action appears from the affidavits and the answer tendered. That it was so defending it from the commencement is shown by the fact that by reason of demurrers interposed by the defendant the complaint was twice amended; and from the further fact that before the second amended complaint was filed a stipulation was entered into by the attorneys for the parties permitting plaintiffs to change their cause of action.

5.  Counsel for plaintiffs contend, and cite authority to the point, that forgetfulness is not sufficient ground for vacating or setting aside a judgment by default. As previously stated, each case must depend upon its own facts, and the circumstances in this case do not disclose that the default taken was due to forgetfulness on the part of any of the officers of the corporation or its attorney. Forgetfulness implies previous knowledge and the showing is that none of the officers, except the former secretary who had ceased to be an officer when the pleading was received by him, knew that an answer was required. Their failure to attend to the matter was caused by inattention, and the other circumstances related, considered in connection with the liberal purpose of the statute, are sufficient to excuse their negligence.

We have considered plaintiffs' application for a diminution of the record and find it to be without merit.

The order appealed from is reversed, with directions to the district court to set aside the default and judgment, and permit defendant to answer upon such terms as may be just and reasonable.